**In re Kathleen O. CHIN, Debtor.**

**Bankruptcy No. 82 B 20552.**

United States Bankruptcy Court, S.D. New York.

June 23, 1983.

Albert J. Sattler, Jr., Peekskill, N.Y., for Law Clinics of Mott & Gray, P.C.

Cornelius Blackshear, New York City, Acting United States Trustee.

## DECISION ON APPLICATION OF ACTING UNITED STATES TRUSTEE FOR REVIEW OF COUNSEL'S FEE, REFUND AND SURCHARGE

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The United States Trustee has made an application to this court seeking a review of the fee arrangement between the debtor and the Law Clinics of Mott & Gray, P.C., and an order directing the Mott & Gray firm to refund to the debtor all fees paid to it in connection with its representation of the debtor, Kathleen O. Chin, over the course of two Chapter 13 cases, a State Supreme Court action and a landlord-tenant proceeding and surcharging Mott & Gray for all court and administrative expenses attendant to this case. The trustee's action was prompted by a letter sent by the debtor to the U.S. Trustee's office in which she expressed her dissatisfaction with the quality of the representation she had received after paying a total of $2495 in fees, only to lose the home she had sought to protect from creditors after filing two separate Chapter 13 petitions under the Bankruptcy Code.

S. Simpson Gray, an attorney with the Mott & Gray firm, contends in his cross motion that his fees were reasonable in light of the complications that developed in the debtor's case, and that he and his firm acted prudently and in the best interests of his client. He also asserts that the U.S. Trustee more properly should have requested permission to conduct a Bankruptcy Rule 205 examination in order to ascertain the facts and circumstances surrounding the fees paid by the debtor in return for legal services, and requests that the U.S. Trustee be charged with attorneys' fees and costs for bringing this action. Hence, this court must determine whether the actions of the Mott & Gray firm or of its principal, S. Simpson Gray, warrant a refund to the debtor of any of the $2495.00 in fees paid to that firm.

## FINDINGS OF FACT

1. The debtor was the owner of an undivided one-half interest in real property located at 85 Grapel Street, Rye, New York.

2. The debtor's grandmother had previously owned the subject premises, and had devised an undivided one-half interest to Thelma Johnston, the debtor's mother, and to the debtor's two daughters, Lisa Leist and Ling Noonan, who jointly owned their one-half interest.

3. The debtor obtained her one-half interest in the premises when Thelma Johnston conveyed her interest to the debtor in a deed dated November 8, 1979. The debtor's mother had been divorced from her husband who also lived in the house, and she did not wish to remain living there any longer. Thus, the debtor agreed to purchase her mother's interest in the house.

4. On November 8, 1979 the debtor and her two daughters executed a purchase money mortgage in favor of the debtor's mother in the amount of $39,500.00 as the consideration for the conveyance of the one-half interest to the debtor.

5. The mortgage provided for monthly payments of $381.20 over a ten-year period, with a balloon payment due on the balance after the ten years. The debtor did not make any of the monthly payments called for under the terms of the mortgage. The debtor explained that her mother was supposed to have vacated the premises by December 31, 1979, allowing the debtor to rent the furnished upstairs apartment that her mother had occupied. The debtor had planned to use the funds received from renting the apartment to pay the mortgage. However, these plans were upset when the debtor's mother did not vacate the premises as per the agreed upon schedule.

6. In January, 1981, Thelma Johnston commenced a foreclosure proceeding in Supreme Court, Westchester County. A judgment of foreclosure and sale was entered on

March 30, 1982, in the amount of $52,173.26 plus $1,173.16 as costs and disbursements.

7. The debtor, accompanied by her son-in-law, Jeffrey Leist, first consulted with the Law Clinics of Mott & Gray, P.C. (hereinafter "Mott & Gray") on April 2, 1982, seeking advice concerning the possibility of filing a voluntary bankruptcy petition. The debtor was initially interviewed by one Dorothy Frasca, a paralegal employed by Mott & Gray.

8. The debtor informed Mrs. Frasca about the pending foreclosure action concerning her home and produced pertinent documentation concerning the matter, which was returned to her. The debtor also provided relevant information concerning her other unpaid obligations.

9. Ms. Frasca had requested a $25.00 fee to cover the April 2, 1982 consultation, but at the end of the discussion the fee was waived in lieu of the debtor's decision to proceed with filing a Chapter 13 petition. The debtor's son-in-law paid on behalf of the debtor a fee of $660, and the debtor signed an Attorney Fee Agreement indicating payment of that amount. The debtor also signed a Retainer Agreement which describes the fees and services provided by Mott & Gray in return for the $660 fee, and includes an outline of additional fees that would be charged if the case "becomes protracted and/or additional work is required in order to protect [the debtor's] interest." Additional fees of $100 are required in the event that amended schedules must be filed or a plan needs modification, and fees of $350 are charged for litigation "over valuation and/or other type issues."

10. On April 16, 1982, a Chapter 13 petition was filed on behalf of the debtor, pursuant to 11 U.S.C. § 301, and assigned the docket number 82 B 20233. Her petition indicated that she was being represented by Mott & Gray.

11. Subsequently, the debtor received a letter from Mott & Gray dated April 26, 1982, signed by Dorothy Frasca, Paralegal, informing her that "*the court* has ordered an appraisal of your house", (emphasis added), and stating that the cost for such appraisal was $300. The letter also indicated that the court required copies of the debtor's income tax returns for the previous two years. Presumably the letter sent to the debtor was prompted by an April 19, 1982 letter sent to Mott & Gray by the Standing Chapter 13 Trustee, Jeffrey L. Sapir, in which he requested that there be an appraisal done of the premises and that he be furnished with the debtor's income tax returns filed for the prior two years. The request for the appraisal and the tax returns were in no way sanctioned by any direction from this court.[1]

12. On May 12, 1982, the mortgagee, Thelma Johnston, commenced an adversary proceeding in this court to vacate the automatic stay so as to permit a foreclosure sale of the premises. A hearing on the complaint was scheduled for June 2, 1982, and subsequently postponed until one day later, June 3, 1982.

13. The debtor testified in the instant proceeding that the first time she had met with an attorney from Mott & Gray was when she arrived for the June 3, 1982 hearing. The attorney, one Dean Mendelson, asked her for $150 which she had been instructed to bring with her, and she handed him cash in that amount.[2]

14. At that hearing, the debtor became ill and fainted, causing the hearing to be adjourned to June 10, 1982. The debtor testified that she first met Mr. Gray on the adjourned date when he appeared on her behalf. However, Mr. Gray's testimony di-

---

1. An October 15, 1982 letter sent to the debtor by Mott & Gray, more accurately reflects that it was the Standing Chapter 13 Trustee who had requested (in a September 23, 1982 letter addressed to Mott & Gray) the appraisal and the tax returns.

2. Although it is not entirely clear, this amount probably represented a partial payment towards a $350 fee required by Mott & Gray to handle the adversary proceeding, as per the Retainer Agreement. The debtor did eventually pay the entire $350 fee for the adversary proceeding.

rectly contradicts that of the debtor, in that he has stated that he met with the debtor on or about April 5, 1982, prior to her signing the petition and counseled her with regard to the petition's contents. The debtor insists that she signed the petition on April 2, 1982, the same day that she had discussed her financial situation with the paralegal, Dorothy Frasca.

15. At the adjourned hearing date on June 10, 1982, the attorney for the mortgagee, Thelma Johnston, failed to bring an expert witness to testify as to the valuation of the property which was necessary for proving that there was a lack of equity in the property. Mr. Gray made an oral motion to dismiss the complaint which was denied, and the court rescheduled the hearing for June 24, 1982 to give the mortgagee an opportunity to correct the evidentiary deficiency. On June 23, 1982, one day prior to the adjourned date, the debtor suffered a fall at her place of employment, injuring her leg and requiring her hospitalization from June 24, 1982 through July 22, 1982. After her release from the hospital, the debtor was confined to her home, receiving the care of a homemaker seven days a week for eight hours each day, until September or October, 1982.

16. While in the hospital, the debtor kept in contact with Dorothy Frasca, and the Mott & Gray office sent a total of five letters to the debtor between June 24, 1982 and August 9, 1982, advising her of each adjourned date for the hearing on the adversary proceeding to lift the automatic stay.

17. The debtor's illness caused four adjournments of the trial, until at last a hearing was scheduled for August 12, 1982.

The debtor did not attend the hearing. Her counsel (Mr. Gray appeared on the debtor's behalf) represented to the court that she was too ill to appear, and orally requested a further adjournment of the matter. However, counsel for Thelma Johnston produced an affidavit from the debtor's physician which stated that Mrs. Chin was well enough to attend the hearing.

18. During the August 12, 1982 hearing, this court observed that three months had already elapsed since the date the complaint to vacate the stay had been filed, and that Bankruptcy Code § 362(e) [3] compelled a ruling that the stay had terminated 30 days after the complaint had been filed. The court explained that there remained nothing more to do and that in effect there was nothing further before the court to be determined. Rather than having the court sign an order to the effect that the stay was vacated, Mr. Gray requested permission to dismiss voluntarily the Chapter 13 petition, which was granted. Mr. Gray's request had been made without the debtor's knowledge. Indeed, the debtor testified at the February 1, 1983 hearing in the instant proceeding that Mr. Gray originally told her that *the court* had dismissed her first petition on August 12, 1982. However, she learned that it was *in fact Mr. Gray who had requested dismissal of her first petition* when the court played a tape recording of the August 12, 1982 hearing, during an October 5, 1982 proceeding. Thus, it was on the latter date that the debtor discovered that *her own attorney* was responsible for the dismissal of the first petition. The order dismissing the petition was entered on September 1, 1982. Mr. Gray has testified in the instant proceeding that his reason for

---

**3.** § 362. Automatic Stay.

    (e) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a prelimi-

nary hearing, or may be consolidated with the final hearing under subsection (d) of this section. If the hearing under this subsection is a preliminary hearing—

    (1) the court shall order such stay so continued if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the final hearing under subsection (d) of this section; and

    (2) such final hearing shall be commenced within thirty days after such preliminary hearing.

requesting the dismissal of the petition was that he hoped to protect the interests of the debtor by leaving open a possibility of filing another Chapter 13 petition, which he believed not to be possible if the stay were lifted and the mortgagee was permitted to hold a sale. Mr. Gray believed that he could nullify the effect of a lifting of the stay by instead requesting a dismissal of the first petition, followed by the filing of a second Chapter 13 petition, thereby protecting the debtor's property from a foreclosure sale with a new automatic stay.

19. Although Mr. Gray had made several requests for adjournments during the course of the adversary proceeding, he had not made any application to extend the 30 day period prescribed in § 362(e).

20. The Chapter 13 Standing Trustee had filed a motion to dismiss the first Chapter 13 petition pursuant to § 1307(c)(1) on the ground that the debtor had made no plan payments. The motion became moot because an order had already been entered on September 1, 1982 dismissing the petition.

21. On September 3, 1982, Mott & Gray filed a second Chapter 13 petition on behalf of the debtor, docket number 82–B–20552. The fee charged to the debtor for the second filing was $860, as reflected in the Bankruptcy Rule 219(b) statement annexed to the petition, against which the debtor initially made a $160 payment on the same date, leaving a $700 balance. The debtor testified that she signed the second Chapter 13 petition in the courtroom on October 5, 1982. This cannot be possible in light of the fact that the petition was filed on September 3, 1982, and would not have been accepted for filing without the debtor's signature.

22. The testimony adduced at three hearings on this matter indicated that the

debtor then made a $500 payment towards the balance with a check dated September 15, 1982 and paid to the order of Mott & Gray, drawn on the account of Reverend Oscar McLaughlin, the debtor's minister.

23. Subsequently, on October 2, 1982 and October 5, 1982, the debtor made two payments in the amount of $300 and $200, respectively, towards the balance due. The debtor testified that these two cash payments were made when the debtor was told by the Mott & Gray office that Reverend McLaughlin's check had bounced. The debtor learned later that in fact the check had not bounced.

24. Notwithstanding the imposition of the "new" automatic stay upon the filing of the second Chapter 13 petition on September 3, 1982, a sale of the premises occurred on September 14, 1982. By order to show cause returnable October 5, 1982, the debtor's attorney sought to set aside the sale as a violation of the automatic stay. The debtor was present at this hearing. Mott & Gray charged the debtor an additional fee for this hearing, in the amount of $100.

25. The sale was not set aside. Counsel for the mortgagee informed the court that a judgment of foreclosure and sale had been entered against the property on March 30, 1982. Relying on *In re Garner*[4] and *In re Pearson*[5], this court declined to disturb the sale, on the basis that when a final judgment of foreclosure and sale has been entered against the property, the debtor no longer has a sufficient interest in the property to allow a curing under Code § 1322(b)(5), since the judgment constitutes a merger of the judgment and mortgage, leaving no mortgage to reinstate. Hence, this court stated its position that the debtor had no interest in the property at the time the petition was filed which would warrant a voiding of the sale.[6]

---

**4.** 13 B.R. 799 (Bkrtcy S.D.N.Y.1981), aff'd 18 B.R. 369 (S.D.N.Y.1982).

**5.** 10 B.R. 189 (Bkrtcy E.D.N.Y.1981).

**6.** Although *In re Taddeo,* 685 F.2d 24 (2d Cir. 1982) had been decided at the time of the October 5, 1982 hearing, this court opined that the

facts of that case were distinguishable from this case. In *Taddeo,* the state court had granted summary judgment for the mortgagee, but *before* the mortgagee had obtained a final judgment of foreclosure and sale, the Taddeos filed a Chapter 13 bankruptcy petition. The Second Circuit held that the Taddeos could pay the mortgage arrears and reinstate the mortgage

26. The debtor testified that Mr. Gray informed her during a conversation held in the parking lot outside the courtroom, that there could be an appeal of this court's decision not to overturn the sale, which would involve a total fee in the range of $2,000–3,000, with $500 required immediately if Mott & Gray were to file the appeal. The debtor testified that the extra $500 paid to Mott & Gray to cover Reverend McLaughlin's check which had not in fact bounced (See paragraph # 22 and # 23 above), was applied towards the $500 fee for filing the appeal.

27. Although Mr. Gray initially planned to pursue the appeal, he later changed his strategy to that of applying to the state court to try to undo the sale, believing that he could achieve a speedier remedy. Thus, the same $500 earmarked for the appeal was then applied to the State Supreme Court action in which Mott & Gray sought to set aside the sale. After one or two hearings in Supreme Court the application was denied.

28. There was also a landlord-tenant action in City Court, Rye, New York in which Mott & Gray appeared on one or two occasions representing the debtor in an attempt to defeat an eviction proceeding and keep her in possession of the house. The debtor paid a fee of $225 to Mott & Gray for these services.

29. Ironically, Mr. Gray did not receive full payment from the debtor for the second Chapter 13 petition, and therefore, instead of applying to the court for permission to withdraw as counsel because the debtor allegedly did not "cooperate" with him, he took it upon himself to characterize the very petition he filed in her behalf as having been filed in bad faith, and sought to undermine the position of his own client by a unilateral request for a dismissal of the second Chapter 13 petition. In his affidavit in support of his motion, Mr. Gray explained that his client's lack of cooperation arose out of failure to pay his attorneys' fees. This was stated as follows:

"1. I am the attorney for the debtor.

2. On or about September 1, 1982, the debtor retained our services to represent her in a Bankruptcy Proceeding.

3. The debtor agreed to pay your affirmant $860.00.

4. The debtor has paid only $160.00.

5. The debtor agreed to make payment on September 6, 1982.

6. Since the inception of this action, the defendant has failed to fully cooperate with her counsel.

under Code § 1322(b), notwithstanding the mortgage acceleration. However, in the instant case, a judgment of foreclosure and sale had been entered *prior* to the filing of the Chapter 13 petition. Thus it is unclear whether Taddeo can serve as precedent for deaccelerating a mortgage and permitting a curing of the default in a situation where there is a judgment of foreclosure and sale entered before the bankruptcy petition is filed. [But see *In re Johnson,* No. 1316 (slip opinion) (2d Cir. May 19, 1982)], footnote # 3, where the court stated:

"Parenthetically we note that this court has since then permitted the curing of a mortgage default by deacceleration under a Chapter 13 plan reinstating the original mortgage payment schedule." (Citing *Taddeo*).
Is the Second Circuit's very broad statement suggesting that its ruling in *Taddeo* extends to a situation involving a final judgment of foreclosure and sale? This court maintains that the question remains unanswered. This court had anticipated that *In re Maiorino,* 691 F.2d 89 (2d Cir.1982), a case that was still pending at the time of the October 5, 1982 hearing, would resolve any uncertainty in this circuit because that case involved a final judgment of foreclosure and sale entered prior to the filing of the bankruptcy petition. The lower courts in *Maiorino* had followed *Garner* (supra, f.n. # 4) and *Pearson* (supra, f.n. # 5), and a decision in the Second Circuit would have settled the issue as to whether an accelerated mortgage can be cured and reinstated under a Chapter 13 plan notwithstanding the entry of a final judgment of foreclosure and sale prior to the filing of the bankruptcy petition. If *Maiorino* had been reversed by the Second Circuit, then there would have been a basis for overturning the sale of Kathleen Chin's house. Unfortunately, the *Maiorino* case was not decided on the merits; the Court *dismissed the appeal as interlocutory.*

A recent Southern District Bankruptcy Court decision has interpreted the broad language in *Taddeo* to permit a Chapter 13 deacceleration of a mortgage debt at any point up until actual sale. *In re Tuchman,* 29 B.R. 39 (Bkrtcy S.D.N. Y.1983).

7. That defendant has delinquent (sic) in paying for legal services rendered.

8. *That debtor is clearly acting in bad faith."* [Emphasis added].

The motion has been adjourned several times and is still pending, according to the court docket, with a return date of July 11, 1982.

30. On November 19, 1982 the debtor wrote a letter to the United States Trustee alleging among other things, that the first Chapter 13 was dismissed without her knowledge; that she had paid approximately $2500 in fees to Mott & Gray; and that she was distraught over the way her case had been handled, having lost her home despite all the legal fees expended.

31. Mr. Gray testified that with regard to the two Chapter 13 cases, his firm invested 10–15 hours of work during the first Chapter 13 case, and 7–10 hours during the second.[7]

32. A summary of the fees that were actually paid by the debtor to the Mott & Gray firm is as follows:

First Chapter 13 Case

| | |
|---|---|
| Fee for Petition | $ 660 |
| Fee for adversary proceeding | 350 |

Second Chapter 13 Case

| | |
|---|---|
| Fee for Petition (partial down payment) | $160 |
| Payment towards balance | 500 |
| " " " | (300 |
| " " " | *(200 |
| Order to Show Cause | 100 |
| Landlord-Tenant Appearances | 225 |
| | $2495 |

*Later applied to the State Supreme Court action.

7. Mr. Gray has testified that his firm has an hourly billable rate for attorneys ranging between $75–100 per hour, depending on whether outside counsel is retained, and $40 per hour for administrative or secretarial costs. He outlined the services rendered in both Chapter 13 cases as follows:

FIRST CHAPTER 13 CASE:

$660 – Petition and Filing Fee:
 – preparation and filing of petitions and schedules;
 – serving of petition on mortgagee's counsel and state referee

$350 – Adversary Proceeding Fee:
 – prepared answer to complaint
 – appearances at hearings, telephone calls and letters advising of adjournments

Total time estimated at 10–15 hours.

## DISCUSSION

An attorney's concern about collecting a reasonable fee for representing a debtor in a bankruptcy case is understandable and should not be condemned. To be sure, the court agrees with the respondents that: "A law firm has obligations to itself, its employees, and to the profession, to be concerned about its fees." [Respondent's Post Trial Brief P. 8]. However, overreaching for fees by attorneys in bankruptcy cases is not to be condoned or allowed.

In order to insure that a debtor's transactions with attorneys for services rendered or to be rendered in connection with a bankruptcy case are reasonable, Congress adopted Code § 329, which is derived in part from section 60d of the former Bankruptcy Act, and governs the allowance of fees to attorneys for debtors under the Bankruptcy Code. This section permits the court to deny compensation to a debtor's attorney, to cancel an agreement to pay compensation, or to order return of the compensation paid, if "such compensation exceeds the reasonable value of any such services." Additionally, Code § 329(a) requires an attorney representing a debtor to disclose all compensation paid or promised within one year before the petition date, for all legal services rendered or to be rendered in connection with the bankruptcy case. This section is implemented by Bankruptcy Rule 219(b) which also requires a debtor's attorney to file with the court a statement setting forth the compensation paid or to be paid in connection with the case in order to

SECOND CHAPTER 13 CASE:

| | |
|---|---|
| Secretarial | 30–45 min. preparing petition |
| | 1 hr.–1½ hrs. preparing schedules |
| | Correspondence: 2 hrs: |
| | – to Mrs. Chin; notices for creditors; notices re amendments; updating information; phone calls |
| Attorney and Secretarial | 1–1½ hrs. filing and serving petition on respective parties |
| | 1–1½ hrs: Amendments (3) |
| Attorney | 1–1½ hrs. attending 341 hearing |
| | 35 minutes: preparing motion for 60–month plan |

Total time estimated at 7–10 hrs.

assure that allowances for compensation to attorneys for a debtor are fair but not excessive.

In this case the respondents, Mott & Gray, filed two successive Chapter 13 petitions for the debtor on April 16, 1982 and September 3, 1982. The fee charged and collected for the first Chapter 13 case was $660, inclusive of the $60 filing fee. The fee actually collected in the second Chapter 13 case was $760, inclusive of the $60 filing fee and an order to show cause. They also received $350 for an adversary hearing in the first Chapter 13 case and an additional $725 for activities in State Supreme Court and City Court with respect to the property that was the primary subject of the two Chapter 13 cases, for a total of $2495.

The $660 fee that the debtor originally paid to the respondents for the preparation of a Chapter 13 petition, for their appearance at the meeting of creditors, for their appearance at the confirmation hearing and for counselling the debtor in an effort to prevent a foreclosure of the debtor's interest in her house follows the standard scenario of most Chapter 13 cases. The major objective is to obtain for the debtor the injunctive relief afforded by the automatic stay under Code § 362 while the debtor endeavors to confirm a plan of rehabilitation that allows the debtor to cure defaults under the mortgage within a reasonable time as well as to maintain the current mortgage payments pursuant to Code § 1322(b)(5). However, this debtor lost the benefit of the automatic stay in her first Chapter 13 case because the respondents never bothered to obtain an extension of the stay under Code § 362(e) or any similar protective order to toll the 30-day period that commenced upon the filing of the mortgagee's request for relief from the stay, notwithstanding several adjournments of the trial. Accordingly, the stay expired automatically thirty days after such request pursuant to Code § 362(e). Even without the failure on the part of the respondents to request an extension of the 30-day period, they probably would not have saved the debtor from losing her interest in her home because she did not appear to be financially able to cure the mortgage default and make the necessary plan payments. Indeed, she did not make any of the payments to the standing Chapter 13 trustee as required under her proposed plan. However, all of the additional legal maneuvering that the respondents subsequently conducted, and for which they charged the debtor additional legal fees, was occasioned by their own failure to extend the automatic stay while adjournments were sought by the debtor as well as the mortgagee.

When this court advised Mr. Gray, a member of respondents' firm, that the automatic stay had expired pursuant to Code § 362(e), he asked for a voluntary dismissal of the Chapter 13 case, which was granted without objection. However, he neglected to inform his client that he had requested the dismissal. Instead, Mr. Gray told the debtor that *the court* dismissed her case. It was only when the court played a tape of the August 12, 1982 hearing during the October 5, 1982 proceeding held after the commencement of the second Chapter 13 case, that his surprised client learned for the first time that Mr. Gray had requested the dismissal so that he could file a second Chapter 13 case.

Two successive Chapter 13 cases are not necessarily reflective of bad faith, especially if in the interim there has been a change in the debtor's financial condition so as to warrant a second try. *In re Bumpass,* 28 B.R. 597, 10 B.C.D. 495 (Bkrtcy.S.D.N.Y. 1983). See *In re Johnson,* slip opinion, No. 1316 (2d Circuit, May 19, 1983). However, when there is no change in the debtor's financial condition, a second Chapter 13 case filed immediately after the dismissal of the first Chapter 13 case is indicative of bad faith. *In re Bystrek,* 17 B.R. 894 (Bkrtcy E.D.Pa.1982); *In re Roderick,* 20 B.R. 485 (Bkrtcy R.I.1982).

The respondents well knew that a second Chapter 13 case was hopeless because the debtor was not financially able to succeed. However, this fact was ignored by respondents when they saw the opportunity for collecting another fee. That their concern

was directed towards the collection of another fee in the face of a hopeless situation is manifestly stated in their brief as follows:

"Concern for the fee is especially warranted when a firm agrees to represent a client of the irresponsible type as in this case, unemployed although capable of being gainfully employed, owing money to many creditors, being sued in a foreclosure proceeding by her own mother who gave her the premises, and then continued to occupy it rent free.

\*     \*     \*     \*     \*     \*

The debtor has attempted through the office of the U.S. Trustee, to transfer responsibility for her own predicament and the hopelessness of the financial situation in which she placed herself, from herself to the firm of Mott & Gray, since she can no longer take advantage of her creditors or her mother as she had done for several years until they commenced legal action against her."

An attorney in a bankruptcy case is entitled to be paid a reasonable fee for his legal services. An attorney should also be encouraged to protect the rights of his debtor-client even in the face of hopeless odds. However, an attorney should not be permitted to extract two fees from a debtor as a result of a hopeless situation which was partially the attorney's own creation. Had the respondents not failed to apply for an extension of the automatic stay their client might have had the injunctive protection a bit longer, notwithstanding that her chances for preventing the mortgagee from obtaining relief from the stay were slight. Had Mr. Gray informed his client that he requested a dismissal of the first Chapter 13 case, rather than allowing her to believe that the court entered an involuntary dismissal, the client perhaps would not have been as willing to pay another fee in order to file a second Chapter 13 case. Moreover, the respondents were fully cognizant of the debtor's "predicament and the hopelessness of the financial situation in which she placed herself." (Respondents' Brief P. 12). Nevertheless, without any improvement in the debtor's financial condition, the respondents filed a second Chapter 13 petition and extracted another fee, which was clearly in bad faith and without any expectation of success. Indeed, the respondents recognize that the second Chapter 13 petition was filed in bad faith, and they blatantly attempt to use the bad faith filing as a sword against their own former client, as reflected in Mr. Gray's affidavit in support of his motion to dismiss his former client's second Chapter 13 petition for nonpayment of his fee. The respondents should not now be permitted to profit from this improper conduct.

## CONCLUSION OF LAW

In light of the foregoing, the respondents shall remit to the debtor the $760 that they improperly collected from her for their legal services in connection with the second Chapter 13 case. Additionally, they shall pay to the office of the United States trustee the sum of $750 to defray the costs of the preparation for the trial and the three days of hearings with respect to this matter. The respondents' application for costs is denied.

SUBMIT ORDER on notice.