**In re Frank BONO, Debtor.**

**Bankruptcy No. 086–60904–21.**

United States Bankruptcy Court,
E.D. New York.

Feb. 10, 1987.

**340**

Thomas C. Neal, Smithtown, N.Y., for debtor.

Stuart P. Gelberg, Garden City, N.Y., Trustee.

Howard H. Stein by Eleanor A. Hoffmann, Flushing, N.Y., for Federal Home Loan Mortg. Corp.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Before the Court in this Chapter 13 proceeding are motions to dismiss by both the Chapter 13 Trustee and the Federal Home Loan Mortgage Corporation ("Federal"), the holder of the mortgage on the residence of the debtor, Frank Bono. The movants invoke § 109(g) of the Code, which disqualifies an individual from being a debtor, if during the preceding 180 days, he was a debtor in a case which "was dismissed by the court for willful failure of the debtor to abide by orders of the court,

or to appear before the court in proper prosecution of the case." Both also request sanctions pursuant to Bankruptcy Rule 9011 against Bono and his attorney, Thomas C. Neal, Esq..

This case demonstrates the abuses to which the bankruptcy laws are susceptible. At little or no cost, Bono has managed, with the help of the bankruptcy laws, to occupy with his family a valuable house for the last three years, paying nothing for such occupancy, while clogging this Court with three separate Chapter 13 proceedings, each one requiring the mailing of notices, the scheduling of hearings, and the preparation of motions and orders, thereby burdening the Chapter 13 trustee, the clerical personnel of the court, and the calendar of the undersigned.

According to the records of this Court, of which the Court takes judicial notice, and undisputed affidavit proof, Bono has accomplished this free occupancy for himself and his family as follows:

On December 23, 1983, he (possibly with his sister) purchased the home in which he now resides at 16 Freshman Lane, Stony Brook, New York, financing the purchase with a purchase money mortgage in the amount of $93,000.00. That mortgage, assigned to Federal, went into default almost immediately in February, 1984.

Federal's resulting foreclosure proceeding was automatically stayed when Bono filed his first Chapter 13 petition on September 24, 1985, acknowledging unpaid mortgage arrears of $35,848.00. By Order of the Court, the first payment to the Chapter 13 trustee became due October 6, 1985. It was never paid, nor was any other payment made. When Bono failed to appear for a confirmation hearing on January 14, 1986, his proceeding was dismissed.

Federal then resumed its foreclosure proceeding and advertised the debtor's property for sale on May 2, 1986.

Bono now repeated the same ploy that had worked so well before. He filed a second Chapter 13 petition on April 29, 1986, just three months after he had failed

to appear at the confirmation hearing on his first petition. By this time, his mortgage arrears had grown to $38,432.00. His first payment under the second petition became due May 24, 1986. It was never made, nor was any money ever paid the Chapter 13 trustee.

By motion, noticed for hearing on the same date as the confirmation hearing on Bono's second plan, the Chapter 13 trustee moved to dismiss or convert the case. One ground was that under § 109(g), the debtor was disqualified, by reason of his previous filing, from being a debtor; a second, was the debtor's willful failure to make payments. The trustee's motion read in part: "To date, two payments have become due and the debtor has failed and refused to make even the first payment."

At the hearing on the trustee's motion, at which the then-attorney for the debtor, Bernard Greco, Esq., appeared and was heard, the Court found a "wilfull (sic) failure to make payments." Its Order dismissing the proceeding, signed on August 6, 1986, recited that the case "is hereby dismissed upon the debtor's willful failure to make payments pursuant to 11 U.S.C. § 1326 and to appear on July 10, 1986." The proceeding was closed on December 24, 1986.

As soon as the proceeding was dismissed, Federal took steps to reschedule its foreclosure sale. But Bono was ahead of Federal. On October 17, 1986, even before Bono's second proceeding had been closed, he was consulting Thomas C. Neal, Esq. with respect to filing a third petition. By that time, he owed Federal $46,554.11 and was 31 months in arrears on a mortgage not yet three years old. Under the Chapter 13 plan prepared by Neal, Bono proposed to pay the Chapter 13 trustee $1,848.95 a month, plus making current monthly mortgage payments of $1,348.00 outside the plan.[1]

▮ Neal did not file the new petition immediately. While Bono consulted Neal on October 17, 1986, his petition was not filed until six weeks later, on December 2, 1986, that being the date on which the advertised sale of his property was to take place.[2]

Bono's first payment under his third petition was due on January 2, 1987. As before, nothing has been paid.

This time, Federal did not wait for Bono, by paying nothing to the Chapter 13 trustee, to expose the bad faith behind his filing, but brought on the present motion to dismiss pursuant to 11 U.S.C. § 109(g). Federal claims that the present petition was filed solely to obstruct its efforts to foreclose on its mortgage; it asks costs and sanctions against the debtor and his attorney in the amount of $450.00. The Chapter 13 trustee has also moved to dismiss, pointing out that § 109(g) barred the present filing. He, too, asks costs and sanctions against both the debtor and the attorney for their abuse of process and contends that they have "unreasonably multiplied the proceedings herein."

At the hearing on these motions, Bono did not appear, nor did he furnish any excuse for his nonappearance. Neither he nor his attorney, who did appear, offered any affidavit or suggested the existence of any evidence to controvert Federal's claim that this Chapter 13 proceeding was filed solely to block Federal's pending foreclosure proceeding.

Mr. Neal, who appeared to oppose the imposition of sanctions on himself, claimed that when Bono consulted him, he originally only disclosed one prior Chapter 13 proceeding and explained his inability to carry

---

1. Although Bono's own income is only $2,600.00 a month, he proposed to pay the mortgagee inside and outside his plan, a total of $3,196.95 a month. The difference between his income and his payments were to come from his mother and sister, as "Contribution to rent."

2. When the third petition was filed on December 2, 1986, the Court had not yet closed the second proceeding. That was not closed until December 24, 1986. Therefore, there is a question whether the Clerk's Office should have accepted a third petition since no one can have two bankruptcy proceedings pending at the same time.

it out as due to the loss of his employment and the illness of his mother. Mr. Neal's research persuaded him that the recital in the Court's Order in the earlier case that it was being dismissed for willful failure was not conclusive with respect to the applicability of § 109(g); that there was authority that § 109(g) precluded refiling only where it was demonstrated that the earlier failure of the debtor to appear or to obey the orders of the court, had been willful in the sense of deliberate and intentional. Accordingly, Neal concluded that Bono was not necessarily barred from filing because his failure to make his payments under the earlier plan had not been deliberate, but due to events beyond his control. No evidence was offered by Neal that these events had, in fact, occurred or that he had any reason, apart from Bono's statements, to believe that they had.

According to the statement filed by Neal pursuant to Bankruptcy Rule 2016(b), he received a fee of $500.00 from Bono. But Neal says that that the check given him by Bono in payment of the fee was dishonored.

## DISCUSSION

Two issues are presented for decision here.

The first is whether this proceeding must be dismissed because Bono is currently disqualified by Section 109(g) from being a debtor in a Title 11 proceeding.

The second is whether sanctions should be imposed on Bono, his attorney, or both, for filing this proceeding and for certifying that Bono's petition was warranted by existing law and that it was not interposed to cause delay.

## I

With respect to the first issue, the answer is a matter of record. That Bono's earlier proceeding had been dismissed for his "willful failure ... to abide by orders of the Court, or to appear before the court in proper prosecution of the case" was determined in that proceeding itself.

Before dismissing the earlier proceeding, the Court explicitly found a willful failure on the part of the debtor. Its Order tracked the language of § 109(g) and squarely predicated such dismissal "upon the debtor's willful failure to make payments pursuant to 11 U.S.C. 1326 and to appear on July 10, 1986."

It is true, as Mr. Neal's research disclosed, that there is virtual unanimity that "willful," as used in 11 U.S.C. § 109(f) [now § 109(g) ], means deliberate and intentional. *In re Ellis*, 48 B.R. 178 (Bankr. E.D.N.Y.1985) ("Willful is generally used to describe conduct which is intentional, knowing and voluntary, as opposed to conduct which is accidental or beyond a person's control. A willful failure to do a required act necessitates a showing that the person, with notice of their responsibility, intentionally disregarded it or demonstrated a 'plain indifference.' ") (citations omitted). *In re Nelkovski*, 46 B.R. 542, 544–45 (Bankr.N.D.Ill.1985); *In re Morris*, 49 B.R. 123 (Bankr.W.D.Ky.1985); *In re Chmura*, 63 B.R. 12, 14 (Bankr.D.N.J. 1986); *In re Fulton*, 52 B.R. 627 (Bankr. D.Utah 1985); *In re Correa*, 58 B.R. 88, 90 (Bankr.N.D.Ill.1986).

But all this means is that whether the failure on the part of the debtor which led to dismissal of his earlier proceeding was deliberate and intentional, or not, is an issue of fact which, like all issues of fact, the debtor is entitled to have heard only once, not twice. Well established principles of repose block its re-litigation. The doctrines of collateral estoppel and *res judicata* apply with full force to proceedings in the bankruptcy courts. *Katchen v. Landy*, 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966); *City Stores Co. v. Mall, Inc.*, 42 B.R. 685, 688 (S.D.N.Y.1984); *In re Bystrek*, 17 B.R. 894 (Bankr.E.D.Pa. 1982); *In re Jefferson*, 59 B.R. 707, 710 (Bankr.S.D.Miss.1986). If the bankruptcy court, in dismissing the case, has heard and resolved the issue of willfulness, collateral estoppel requires that its determination be given conclusive effect in any subsequent proceeding. It is only where the first court

is silent as to its reasons for dismissal that collateral estoppel would not constitute a bar. Whether or not the mere formal incorporation in a court's order of the term "willful" would preclude re-litigation, "specific factual findings of willful conduct," clearly would. *In re Nelkovski, supra,* at 544–45.

Giving conclusive effect to the determination of willful failure in the earlier proceeding is not only dictated by well established principles of issue preclusion, but is most consistent with the language of § 109(g) and the purposes it was intended to serve.

The court best qualified to determine why it is dismissing a proceeding is the court doing the dismissing. If that court declares that the dismissal is for "willful failure," no other court should be allowed to find that it was for some other reason. This was well put in *In re Morris,* 49 B.R. 123, 124 (Bankr.W.D.Ky.1985):

> Unemployment, sickness, strikes, emergencies, the need to replace vehicles or appliances, (a non-exclusive litany of impediments), may impede or deter the debtors' best efforts. Whether such cause is a "willful" failure can best be ascertained by the Bankruptcy Judge entering the dismissal order. Such finding will clearly establish whether section 109(f) is applicable in a subsequent filing, allows all interested parties to know the collateral effect of the dismissal, and minimizes imposing of the automatic stay on a refiled case pending determination of whether § 109(f) applies.

To permit a second court to inquire into the reasons why the first court acted, when the latter had stated them clearly itself, produces exactly the kind of delay and expense which § 109(g) was enacted to stop. *See,* Statement by Senator Orrin G. Hatch (R–Utah), 98th Congress, 2nd Session, 130 Cong.Rec. S.8891 (daily ed. June 29, 1984) *reprinted in* 1984 U.S.Code Cong. & Admin.News 576, 590, 597–98. While prior to its enactment, repetitious filing were dismissed for lack of good faith, inquiry was first necessary. § 109(g) was intended to

provide a "bright line rule." *In re Nelkovski, supra,* at 544.

■ In this case, the facts supporting the applicablity of collateral estoppel are particularly strong. The dismissal of Bono's second Chapter 13 filing was not *pro forma,* but was made in response to a written motion by the Chapter 13 trustee and after a full hearing in which the debtor's attorney participated. As noted earlier, the Court's finding of willful failure was not only noted on the docket, but also subsequently embodied in its formal order.

The debtor, therefore, was disqualified from filing a Chapter 13 plan on December 2, 1986 and his petition must be dismissed.

## II

The second issue is whether sanctions should be imposed on Bono, on his attorney, or both, for filing a third Chapter 13 proceeding in the light of the history of Bono's prior proceedings.

Bankruptcy Rule 9011, which is modeled on Federal Rule FRCP 11, provides:

> Every petition, pleading, motion or other paper served or filed in a case under the Code on behalf of a party represented by an attorney except a ... Chapter 13 statement ... shall be signed by at least one attorney of record in his individual name ... A signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation ... If a document is signed in violation of this rule, the court, on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable

fee and expenses incurred because of the filing of the document, including a reasonable attorney's fee.

FRCP 11, the Second Circuit has said: [E]xplicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed. Simply put, subjective good faith no longer provides the safe harbor it once did. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 253 (2d Cir. 1985).

Sanctions are called for " 'when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in' a pleading, motion or other paper signed by a party or his counsel." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1268 (2d Cir.1987) quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir. 1986).

An exhaustive consideration of FRCP 11 says respecting it:

Rule 11 gives legal force to the ethical directive that a lawyer's duty to his client cannot be permitted to override his duty to the justice system. Notwithstanding a counsel's duty vigorously to represent his client, his pre-eminent duty is to the fair administration of justice. Rule 11 pronounces that diligence, candor and independent professional judgment, rather than unbridled zeal, are the primary responsibilities of counsel. It rejects the notion that attorneys can ignore conflicts between client's interests and the fair administration of justice; lawyers cannot indiscriminately play the role of mouthpiece or hired gun for their clients, but must dissuade clients from pursuing specious claims. Ultimately such conduct is in the best interest of each client, as it enables a jury, judiciary, efficiently to resolve cases properly before it. Note: The Dynamics of Rule 11: Preventing Frivolous Litigation by Demanding Professional Responsibility. 61 NYU Law Review 300, at 316–317 (May, 1986).

When Neal joined Frank Bono in signing Bono's Chapter 13 petition, he certified that Bono was "qualified to file" this petition and was "entitled to the benefits of Title 11 United States Code as a voluntary debtor." He further vouched for the fact that Bono's purpose in filing was to pay off his creditors, and that he was not filing simply for the purposes of delay.

█ Before he signed Bono's Chapter 13 petition, Neal was under a duty to make reasonable inquiry respecting whether Bono was, in fact, "qualified" to be a debtor or whether § 109(g) barred refiling. He was not entitled to rest only on what his client told him when sources were available to corroborate the client's version. *See, Coburn Optical Industries, Inc. v. Cilco, Inc.,* 610 F.Supp. 656, 659 (M.D.N.C.1985).

His duty to make reasonable inquiry embraced examination of the docket and the file in the proceeding to which Bono had been a party within the prior 180 days, to determine whether its dismissal had been due to Bono's willful failure. There was ample time for such examination by this nearby attorney between the date he was first retained on October 17, 1986, and the date the petition was filed on December 2, 1986. Such examination would have disclosed not only that the new filing would have been Bono's third, and not his second as he had told Neal, but that the Court, in dismissing the proceeding, had done so because of the debtor's willful failure.

If Mr. Neal had been of the opinion that, in view of the facts related to him by Bono, this finding was erroneous, there was still time, since the proceeding had not yet been closed (which he could have ascertained by telephone to the Clerk's Office) to move to reconsider the dismissal and reinstate the proceeding. *In re Johnson,* 708 F.2d 865 (2d Cir.1983). That is the proper procedure where due to a "change in circumstances," during the pendency of a Chapter 13 plan, the debtor has been unable to keep up his payments. "[A] debtor who files a subsequent petition after a prior petition is dismissed, must not only demonstrate a

'change in circumstances' but must also show good cause why he ignored applicable statutory provisions in failing to move for relief from the obligations under the prior plan and the prior proceeding." *In re Bolton,* 43 B.R. 48, 50 (Bankr.E.D.N.Y.1984). That was the course Mr. Neal should have followed if he honestly believed that Bono's job loss and his mother's illness accounted for his failure to make payments under his second plan. What Mr. Neal did, instead, was to do nothing until the day of the scheduled foreclosure sale so as to block that sale and thereby secure to his client additional cost-free occupancy.

The reasonable inquiry, which Bankruptcy Rule 9011 mandates, would have disclosed to Neal not only that the Bankruptcy Court had found willful failure in dismissing Bono's earlier proceeding, a finding which is conclusive under the doctrine of collateral estoppel and fatal to Bono, but also that such a finding was the only permissible one in light of Bono's repeated resort to Chapter 13 without paying anything to anyone.

> Repeated conduct strengthens the inference that the conduct was deliberate. Additionally, the court will infer from a pattern of dismissals and refilings in unchanged circumstances willful failure to abide by orders of the court and an abuse of the bankruptcy process which this amendment was designed to prevent.

*In re Nelkovski, supra,* at 544.

Even had § 109(g) never been enacted, Bono's new filing would represent a serious and obvious abuse of the bankruptcy laws. No one familiar with Bono's history in this Court could have reached any other conclusion but that Bono was not proceeding in good faith and was filing for a third time under Chapter 13 in a period spanning less than 15 months, only in order to obstruct and delay Federal's pending foreclosure proceeding. Such a filing is in bad faith. *In re Johnson,* 24 B.R. 832 (Bankr. E.D.Pa.1982); *In re French Gardens, Ltd.,* 58 B.R. 959, 965 (Bankr.S.D.Tex.1986); *In re Chin,* 31 B.R. 314, 321 (Bankr.S.D.N.Y. 1983).

How could the loss of a job or a mother's illness sometime subsequent to April, 1986 explain a failure to make promised Chapter 13 payments going back to October, 1985? The explanation is the more improbable in that no petition reflects a second job or includes any income from such employment and Bono's present employment appears to be exactly what he described it to be when he filed his second petition on April 29, 1986.

In light of the history of Bono's use of Chapter 13, disclosed by the docket and the files readily available in Hauppauge, no competent attorney could have formed a reasonable belief that Bono had any purpose in mind in filing still a third time except to block the pending foreclosure sale and to use Chapter 13 to secure another month of no-cost living quarters for himself and his family. No competent attorney could have formed a reasonable belief that Bono, in light of his past performance, had any intention of making any payments to anyone under Chapter 13.

█ Rule 9011 authorizes sanctions against attorneys whose conduct "unreasonably and vexatiously multiplies matters before the court." *In re Perez,* 43 B.R. 530 (Bankr.S.D.Tex.1984); *In re Bayport Equities Corp.,* 36 B.R. 575 (Bankr.C.D.Cal. 1983). Furthermore, the bankruptcy court has inherent authority to assess attorney's fees and expenses against counsel who willfully abuse the judicial processes. *In re French Gardens, Ltd., supra* at 965. *See also, In re Trust Deed Center, Inc.,* 36 B.R. 846 (Bankr.C.D.Cal.1984)

█ This Court has to protect creditors, its own resources, and itself from burdensome filings like this third one by Bono. Attorneys must be discouraged from becoming partners to such abusive filing. Sanctions appear very appropriate, since there is no other avenue for penalizing Bono and Neal or for compensating Federal for the increased costs which they have imposed on it, which include the cost of the present proceedings in this Court and the

cost of readvertising the scheduled fore-closure sale.

Because the responsibilities of the parties are not the same, sanctions will also be unequal. Sanctions are imposed on Bono in favor of Federal in the amount of $450.00 and in favor of Stuart Gelberg, the Chapter 13 trustee, in the amount of $200.00. Sanctions are imposed on Neal in favor of Federal in the amount of $250.00.

Because Bono is disqualified from being a debtor under this Title by virtue of § 109(g), this proceeding is dismissed.

Settle Order.