# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JAYAKRISHNAN K. NAIR, a single person,<br><br>      Appellant,<br><br>    v.<br><br>RICHARD J. SYMMES, individually and on behalf of the marital community comprised of RICHARD J. SYMMES and JANE DOE SYMMES; and SYMMES LAW GROUP, PLLC, a Washington professional limited liability company,<br><br>      Respondents. | No. 77629-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br>FILED: May 28, 2019 |

APPELWICK, C.J. — Nair sued Symmes for legal malpractice, alleging that Symmes was negligent in representing him during prior federal bankruptcy court proceedings. The trial court granted Symmes's motion to dismiss pursuant to CR 12(b)(6), based on collateral estoppel. We affirm.

## FACTS

On June 26, 2017, Jayakrishnan Nair filed a legal malpractice lawsuit against Richard Symmes and Symmes Law Group PLLC.[1] Nair alleged that Symmes was negligent in representing him during prior federal bankruptcy court proceedings, causing him damage.

---

[1] The rest of the opinion refers to Symmes as the individual.

In April 2015, when Nair first retained Symmes, Nair was facing an impending trustee's sale of one of the real properties he owned in Washington. The previous year, Nair had failed to make payments on a $100,000 equity loan from First Tech Credit Union, and First Tech commenced foreclosure proceedings, scheduling a trustee's sale of the property for May 1, 2015. Nair informed Symmes that he wanted to reach a settlement with First Tech to continue the sale for 60-90 days. Nair also told Symmes that he wanted to avoid the foreclosure and a bankruptcy filing.

The following day, on April 15, Symmes informed Nair that he had negotiated a settlement agreement with First Tech. The terms of the settlement required Nair to pay First Tech $40,814.18 by April 29 to stop the foreclosure, and to pay a total of $71,000 within 30 days to satisfy the debt. Nair told Symmes, "'I can come up with the [$71,000] but it will be at least a month. I have no way of coming up with [$40,000] in two weeks.'"[2]

Instead of settling, Nair, with Symmes's assistance, filed an emergency chapter 13 petition on April 29, 2015. An e-mail from Symmes to Nair indicates that their shared intent in filing under chapter 13 was to delay the sale, negotiate a settlement, and allow the bankruptcy to be dismissed. First Tech delayed the foreclosure sale until July 24, 2015.

---

[2] Later, in Nair's supplemental declaration opposing attorney fees and costs in the bankruptcy action, he asserted that he could have easily liquidated his retirement savings to satisfy the debt to First Tech and avoided bankruptcy entirely.

On July 16, 2015, the chapter 13 trustee moved to dismiss Nair's case because Nair's schedules showed that he exceeded the chapter 13 debt limit. The next day, Symmes informed Nair of the trustee's motion to dismiss, and indicated to Nair that he needed to plan his "'exit strategy'" from chapter 13. Symmes suggested to Nair that he either settle with First Tech or convert the case to a chapter 11, as he was not eligible for chapter 13. On July 22, Symmes again discussed with Nair the possibility of settling with First Tech. Nair asked Symmes if the prebankruptcy settlement Symmes negotiated was still available and stated, "'I would rather convert to [chapter] 11 than pay them [$]45[,000] after liquidating my 401k and still continue with the loan for the next several years at 7.5 percent interest."

On August 10, Symmes sent an e-mail to Nair to inform him that a response to the trustee's motion was due in three days. In his reply, Nair directed Symmes to convert to chapter 11. On September 2, 2015, the court converted Nair's case to a chapter 11 bankruptcy. That day, Symmes informed Nair of additional chapter 11 requirements, and also advised Nair that it would still be less expensive if he settled with First Tech and dismissed the case. Nair did not settle with First Tech, and instead continued in his chapter 11 case for the next 13 months.

On February 26, 2016, Nair appeared at a hearing to confirm his chapter 11 plan. At the hearing, Nair testified that he would find additional employment to fund his plan and file his outstanding tax returns for the years 2011-2015. The bankruptcy court declined to confirm the plan and instead continued the hearing.

Thereafter, Nair failed to file an amended plan, failed to find additional employment, failed to timely file monthly financial reports, failed to move for continued use of cash collateral, failed to file his outstanding tax returns, and failed or refused to make payments to at least some of his secured creditors.

One of these secured creditors moved for dismissal or conversion of Nair's chapter 11 case. The court granted a portion of that motion, finding that Nair failed to meet chapter 11 requirements. On October 5, 2016, the court entered an order converting Nair's case to chapter 7. Symmes and Nair agreed that Symmes would withdraw from representing Nair, so that Nair could pursue a pro se appeal of the conversion. The court then entered an order allowing Symmes to withdraw.

A few months after withdrawing, Symmes filed a notice of hearing and application for attorney fees and costs in the bankruptcy court. Nair, represented by new counsel, objected to the application. Nair alleged that Symmes had been negligent, and that his representation provided a basis for a potential legal malpractice action. The court held hearings on Symmes's application on February 3 and 17, 2017. The court concluded that, in his representation of Nair, Symmes did not breach the duty of care an attorney must exercise. And, the court concluded that the fees Symmes requested were reasonable, and ordered the chapter 7 trustee to pay the total amount from unencumbered funds. Later, the court dismissed Nair's chapter 7 case based on a stipulated motion of the trustee and Nair.

After the bankruptcy case was dismissed, Nair filed his malpractice claim against Symmes in superior court. Symmes filed a motion to dismiss pursuant to CR 12(b)(6), based on collateral estoppel. On October 31, 2017, the trial court granted Symmes's motion and dismissed Nair's complaint. Nair appeals.

## DISCUSSION

Nair argues that the trial court erred in dismissing his complaint based on collateral estoppel. He asserts that, because he could not have sued Symmes for legal malpractice before his bankruptcy was dismissed, collateral estoppel does not apply.

### I. Standard of Review

This court reviews de novo a trial court's ruling to dismiss a claim under CR 12(b)(6). Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). The court also reviews de novo whether collateral estoppel applies to bar relitigation of an issue. Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 305, 96 P.3d 957 (2004). Dismissal under CR 12(b)(6) is appropriate only if it appears beyond a reasonable doubt that no facts exist that would justify recovery. In re Parentage of C.M.F., 179 Wn.2d 411, 418, 314 P.3d 1109 (2013).

### II. Collateral Estoppel

Symmes argued successfully to the court below that Nair had already litigated the issues of breach and proximate cause of his legal malpractice claim in bankruptcy court. Therefore, he argued that collateral estoppel precluded Nair from relitigating these issues in state court.

Federal common law is used to determine the preclusive effect of a federal court judgment. Taylor v. Sturgell, 553 U.S. 880, 891, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008). The doctrine of collateral estoppel promotes judicial economy and protects parties from the burden of successive litigation by barring the relitigation of issues in certain circumstances. Maciel v. Comm'r of Internal Revenue, 489 F.3d 1018, 1023 (9th Cir. 2007). It prevents a party from relitigating an issue decided in a previous action if four requirements are met: (1) there was a full and fair opportunity to litigate the issue in the previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; and (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action. Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1050 (9th Cir. 2008).

The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts. In re Bono, 70 B.R. 339, 342 (Bankr. E.D. N.Y. 1987) (citing Katchen v. Landy, 382 U.S. 323, 334, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966)); see also Woodley v. Myers Capital Corp., 67 Wn. App. 328, 336, 835 P.2d 239 (1992) ("The doctrine of res judicata applies with full force in bankruptcy proceedings.").

Nair argues that he did not have a full and fair opportunity to litigate the malpractice issue to the bankruptcy court.

In deciding whether an opportunity to litigate is "full and fair," a court must make a practical judgment based on at least two considerations. Maciel, 489 F.3d at 1023.

> First, the court must compare the procedures in the prior and subsequent actions. If "procedural opportunities unavailable in the first action . . . could readily cause a different result" in the second action, then the results of the first action generally should not be given preclusive effect. Second, the court must consider the parties' incentives to litigate in the two actions. If a party had good reason not to contest an issue vigorously during the first action and did not, in fact, vigorously contest the issue, that party generally should be entitled to relitigate the issue during the second action.

Id. (citations omitted) (alteration in original) (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979).

A. Procedural Differences

Nair asserts that, because Symmes's fee application was "triable only in equity," the procedural differences in the bankruptcy action and the state action militate against collateral estoppel.

An equitable determination can have collateral-estoppel effect in a subsequent legal action, and this estoppel does not violate the Seventh Amendment right to a jury trial. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 335, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). In Parklane, the Court observed that there were no procedural opportunities available to the petitioners that were unavailable in the first action that might be likely to cause a different result. Id. at 332. And, the Court noted that, in the circumstance, "the presence or absence of a jury as factfinder is basically neutral." Id. at 332 n.19.

7

The Washington Supreme Court agreed with the reasoning of Parklane in Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wn.2d 255, 267-69, 956 P.2d 312 (1998). In Nielson, a medical malpractice action in federal court was tried without a jury, as required by 28 U.S.C. § 2402, and the court found damages totaling over $3 million. Id. at 259-60. The superior court in the state case then ruled the plaintiffs were collaterally estopped from relitigating the issue of the amount of damages. Id. at 261. The Nielsons argued that collateral estoppel violated their constitutional right to a jury determination of damages in state court. Id. at 265. Rejecting their argument, our State Supreme Court held that they had no right to a jury trial on the issue of damages, because no factual issue remained once the federal trial court had determined the amount of damages suffered by the Nielsons as a result of the injury. Id. at 269.

Here, the services performed were in the bankruptcy action under bankruptcy rules. A bankruptcy judge determined that the services performed met the duty of care. While that element would normally go to a jury in a Washington trial, summary judgment would be proper if the moving party were to show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). Our State Supreme Court recently reiterated that "the right of trial by jury is not limitless." Davis v. Cox, 183 Wn.2d 269, 289, 351 P.3d 862 (2015), abrogated on other grounds by Maytown Sand & Gravel, LLC v. Thurston Cty., 191 Wn.2d 392, 423 P.3d 223 (2018). It

observed that, when there is no genuine issue of material fact, summary judgment proceedings do not infringe upon a litigant's constitutional right to a jury trial. Id.

The bankruptcy court's determination that Symmes's services did not breach the duty of care is comparable to a decision on summary judgment. Accordingly, the fact that Nair did not have a right to a jury trial in the bankruptcy court's equitable fee determination did not deny Nair a full and fair opportunity to litigate the malpractice issue.

B. Incentive to Litigate

Nair argues that the bankruptcy trustee, not Nair, "owned the legal malpractice claim" at the time of Symmes's fee hearing. And, he asserts that, as the bankruptcy trustee was the representative of the chapter 7 bankruptcy estate, collateral estoppel is inappropriate because the party to be estopped (Nair) had no incentive or initiative to litigate the malpractice issue in the bankruptcy court. For support, he cites Suter v. Goedert, 396 B.R. 535 (D. Nev. 2008).

The debtors in Suter attempted to exclude a legal malpractice claim from the estate on several grounds. 396 B.R. at 545. The district court in Suter set forth "three related reasons for finding an action to be so personal as to exclude it from the bankruptcy estate." Id. at 546. They were:

> (1) [P]ermitting the debtor to prosecute intimately personal claims serves as a type of catharsis for the debtor; (2) it seems unfair to allow a defendant to "buy" his or her own wrong and to keep it from public scrutiny; and (3) compensation for personal injury claims [is] intended to make a plaintiff whole, not merely to pay off a debt.

Id. The district court emphasized that "[e]ach of these reasons stems from righting a wrong done to a plaintiff . . . . As the court wrote in Sierra Switchboard,[3] the claim must be 'personal,' that is, it must belong to the plaintiff." Id. The district court in Suter ultimately concluded that the debtors' legal malpractice claim was not so personal to them as to exclude it from the estate, because they sought to recover for harm that arose from injuries not to their own persons, but to their daughter. Id. at 544, 546.

This case is distinguishable from Suter because here, Nair's allegation that Symmes was negligent in his representation arose after Nair filed for bankruptcy, not before. This differs from Suter where the debtors argued that their claims, which predated their bankruptcy case, should not be included as part of their estate. 396 B.R. at 544.

Nair retained new counsel, at least in part, to assist in opposing Symmes's fee application. In opposing Symmes's application for fees, Nair argued to the bankruptcy court that Symmes was negligent in his representation and that his services "had no reasonable value." He asserted that Symmes's representation provided a basis for a potential legal malpractice action. Nair also filed lengthy expert testimony in support of his objection to Symmes's application for fees. This demonstrates that he had incentive to, and did vigorously, litigate the issue of whether Symmes's performance violated the duty of care owed to him. That question was central to both the fee dispute and any malpractice claim.

---

[3] Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705 (9th Cir. 1986).

10

The bankruptcy court heard oral argument on Symmes's application for fees, and Nair's opposition, on February 3 and 17, 2017. The court's order approving the application—with 29 findings of fact and 11 conclusions of law—shows the thoroughness with which the parties litigated and the court considered the issue. The court concluded, in part,

> 7. In light of the facts that the debtor approached Mr. Symmes only three weeks before First Tech's foreclosure sale, insisted that he could not afford the settlement offer that Mr. Symmes was able to negotiate, and refused to allow the property to be sold at foreclosure, Mr. Symmes's advice to file a bankruptcy case for the benefit of the automatic stay was reasonable. Believing the Debtor's representations that he would have the necessary funds within 30 days to complete the settlement and anticipating a relatively quick voluntary dismissal of the case, the decision to file a chapter 13 case was a strategic move to avoid the costs of a chapter 11 without putting the debtor's assets into the control of a chapter 7 trustee. Mr. Symmes therefore exercised the degree of care, skill, diligence, and knowledge possessed and exercised by a reasonable, careful prudent lawyer in advising and assisting the debtor his chapter 13 case.
>
> 8. Similarly, the debtor insisted upon avoiding the continued sale and remaining in bankruptcy when faced with the trustee's motion to dismiss and the continued foreclosure sale, despite Mr. Symmes's advice that the debtor pursue a settlement outside of bankruptcy. Although the Court has no evidence as to the parties' discussions of chapter 11 planning pre-conversion, it was reasonable for Mr. Symmes to advise the debtor to convert to chapter 11 given the debtor's stated intent to remain in bankruptcy and prevent the foreclosure sale.
>
> 9. The debtor has also failed to show Mr. Symmes's advice caused him to suffer any damage. First, had the debtor followed Mr. Symmes's repeated advice to settle with First Tech outside of bankruptcy, the debtor would not find himself in this current position. Second, the debtor remained in a chapter 11 case for 13 months, during which time he maintained control over his assets and could have proceeded to plan confirmation and quickly exited bankruptcy had he acted in accordance with the requirements of chapter 11. The debtor increased the expense of this proceeding, lost control of his

11

assets, and now finds himself in chapter 7 due his own decisions not to file his tax returns, pay certain creditors, and find employment, not because of Mr. Symmes's advice or conduct.

Nair had a full and fair opportunity to litigate the issue of whether Symmes breached the duty of care in rendering his professional services in the bankruptcy court. Nair does not dispute the remaining elements of the collateral estoppel doctrine. The issue of breach of duty of care was decided against him. He is collaterally estopped from relitigating that element of his malpractice claim. That is sufficient to support the CR 12(b)(6) dismissal. The trial court did not err in granting Symmes's motion to dismiss.

We affirm.

WE CONCUR:

12