**In re Gwendolyn Rocker
SHULA, Debtor.**

No. 01–14160.

United States Bankruptcy Court,
S.D. Alabama.

Sept. 28, 2001.

Lacey Robertson, Mobile, AL, for Debtor.

William L. Howell, Mobile, AL, for Ford Motor Credit Co.

## ORDER SUSTAINING THE OBJECTION OF FORD MOTOR CREDIT COMPANY TO CONFIRMATION OF THE DEBTOR'S PLAN

MARGARET M. MAHONEY, Chief Judge.

This matter is before the Court on the objection of Ford Motor Credit Company ("Ford") to the confirmation of the debtor's plan. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is sustaining Ford's objection to the confirmation of debtor's plan.

### FACTS

Gwendolyn Rocker Shula first filed a chapter 13 case on May 23, 2000. On her schedules Ms. Shula listed her monthly income as $1,199 and monthly expenses as $1,190. Ms. Shula listed Ford as her only secured creditor. Ford's claim was in the amount of $17,400 and was secured by a 1999 Ford Contour valued at $13,000. Ms. Shula proposed a plan that did not include any interest on the secured portion of Ford's claim and paid 0% on all unsecured claims. Ford objected to confirmation of the plan. At the confirmation hearing, the debtor agreed to pay interest to Ford which made the total secured claim increase to $23,400. The plan was confirmed as orally amended on July 27, 2000. On July 11, 2001 Ms. Shula filed a motion to dismiss her chapter 13 case. According to the Trustee's report, Ms. Shula had paid a total of $4,349 into her plan but, was $1,687 in arrears. Her case was dismissed on July 13, 2001 with a 90–day injunction from filing another bankruptcy case from the date of that order.

On July 22, 2001 Ms. Shula filed a motion to shorten the period of the injunction. This Court granted her motion and reduced the injunction period to August 15, 2001. As is the practice in this district, no notice of the request to shorten the injunction period is given to creditors.

On August 20, 2001, Ms. Shula filed a second chapter 13 petition. On her new schedules Ms. Shula listed her monthly income as $1,238 and her monthly expenses as $1,237. Ms. Shula testified that her medical expenses have actually increased more than her schedules show. She listed her medical expenses as $398 per month but testified that she pays $550 per month for medical expenses. This expense is mainly due to the high cost of at least three prescription drugs she takes. Ford remains her only secured creditor. However, the value she listed for the vehicle securing Ford's debt dropped to $8,600.

There was evidence that the decrease in value of the vehicle was due to normal

depreciation and the fact that newer models of that vehicle have come out on the market since the filing of Ms. Shula's first bankruptcy. Ms. Shula testified that she took good care of the vehicle and that it was in good condition.

Ms. Shula again proposes a plan paying Ford the secured value of its claim with no interest and paying all unsecured creditors 0% pro rata. The contract rate of interest for the vehicle is 9.9%. At 9.9% the total secured claim using the value of $8,600 would be approximately $10,938. There was testimony that Ms. Shula would be considered a high credit risk and would have to pay 18–25% interest if she were to enter into a contract with Ford now. Ford objects to the confirmation of Ms. Shula's plan and claims that the plan was not filed in good faith and does not provide adequate protection to Ford.

## LAW

■ Ford asserts that Ms. Shula has not filed her second bankruptcy petition in good faith. Ford asserts it is Ms. Shula's only secured creditor and unsecured creditors are to be paid 0%. Therefore, Ms. Shula dismissed her first case and filed the second solely to modify Ford's claim and escape her agreement with Ford to pay Ford a total secured claim of $23,400 over the life of her plan. Ford cites to *Chrysler Financial Corporation v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir.2000) as authority for its position. Nolan held that the provisions of a confirmed plan bind a debtor in that case and prevent a debtor from surrendering a car and reclassifying any deficiency as an unsecured claim. Nolan involved a debtor who, during her chapter 13 case, attempted to amend or modify her plan pursuant to 11 U.S.C. § 1329(a)(1). This Court agreed with and cited to the Nolan case in a case which was the same fact pattern as Nolan. See *In re*

*Vionne Sanders, Order Sustaining the Objection of Consumer Portfolio Services, Inc. to Confirmation,* Case No. 98–13325 (Bankr.S.D.Ala. March 19, 2001). However, the case is not applicable here. Ms. Shula is not attempting to modify her plan in her first case. Her first bankruptcy case was dismissed and her plan from that case is no longer binding. A chapter 13 debtor may voluntarily dismiss her case at any time so long as the case has not been converted. 11 U.S.C. § 1307(b).

■ As to the appropriateness of Ms. Shula's second filing, the Bankruptcy Code does not bar the filing of a second case after the voluntary dismissal of a first case. See *In re Metz,* 67 B.R. 462 (9th Cir. BAP 1986), *aff'd,* 820 F.2d 1495 (9th Cir.1987). The issue is whether her second bankruptcy filing was filed in "good faith." Section 1325(a)(3) requires that a plan be proposed in good faith. There is no particular test for determining whether a debtor has filed in good faith. *In re Phoenix Piccadilly Ltd.,* 849 F.2d 1393, 1394 (11th Cir.1988). Good faith is determined on a case-by-case basis and takes into account the totality of circumstances in which the debtor's bankruptcy petition was filed. *In re Madison Hotel Associates,* 749 F.2d 410, 425 (7th Cir.1984). The good faith inquiry is intended to prevent abuse of the provisions, purpose, or spirit of Chapter 13. *In re Solomon,* 67 F.3d 1128, 1134 (4th Cir.1995). "Bad faith may be found when the debtor has a frivolous, noneconomic motive for filing a bankruptcy petition, when there is a sinister or unworthy purpose, or when there is an abuse of the judicial process." 4 Collier on Bankruptcy ¶ 707.03, at 707–10–11 (15th ed.1992).

■ In this case, Ms. Shula paid a considerable amount to the trustee (and Ford) through her plan in her first bankruptcy case. That case lasted for 14

months. She was not able to make all of her payments under the plan and asked that her case be dismissed. Modification of the plan was not possible. She could not have modified her plan to reduce the payments because the unsecured claims were already being paid 0% and payments on secured claims cannot be reduced. Therefore, dismissal was not wrong. By the time she filed her second petition, Ms. Shula's medical expenses had increased significantly. Her prescription costs has risen. "Two successive Chapter 13 cases are not necessarily reflective of bad faith, especially if in the interim there has been a change in the debtor's financial condition so as to warrant a second try." *In re Chin*, 31 B.R. 314, 321 (Bankr.S.D.N.Y. 1983) (citations omitted). If there was no change in the debtor's financial condition, a second Chapter 13 case filed closely after the dismissal of the first case would be indicative of bad faith. Id. However, there has been a change in Ms. Shula's circumstances. Ms. Shula could not pay her creditors and was in need of bankruptcy relief. Ms. Shula's second filing took advantage of the fact that the value of her vehicle has decreased considerably. In fact, Ms. Shula's counsel and Ms. Shula both stated that the lower value of the car in 2001 was one of the reasons (if not the principal one) Ms. Shula dismissed her first case and believed she could propose a feasible second case. However, the fact that the debtor is taking advantage of her legal rights is not, by itself, sufficient to support a finding of bad faith. 4 Collier on Bankruptcy ¶ 707.03, at 707–10–11 (15th ed.1992). This Court finds that Ms. Shula filed her petition in good faith. This Court does not generally establish or rule that there are per se or blanket prohibitions on certain types of filings or certain actions of debtors or creditors. It is necessary to review all of the facts to determine whether an action is proper. If a debtor has a substantial change in circumstances that makes a new filing appropriate because a modified plan is not possible, this Court probably will not conclude the debtor acted in bad faith. If a debtor dismisses and refiles with no significant change in circumstances requiring the dismissal or if a plan modification in the debtor's current case would solve the problem, then a refiling which lowers asset values might well be bad faith. Ms. Shula's evidence established sufficient facts to make the refiling appropriate.

▪ However, Ms. Shula's proposed plan is not feasible. Her schedules indicate that her income is only $1 more than her necessary expenses and she testified that her medical expenses are now about $150 more than she reported in her schedules. She has no discretionary income. If the Court were to confirm her plan as proposed, her payments would be $183 per month which she cannot pay. In addition, Ford is entitled to a reasonable rate of interest on its claim. Ford has presented evidence that the rate of interest should be 18–25%. Even at the contract rate of 9.9% Ms. Shula's payments would go up to about $220 per month. Given Ms. Shula's financial situation, she has not proven that she can make payments on any plan that would include Ford's secured claim. Since she did not sustain her burden of proving feasibility, her plan cannot be confirmed.

THEREFORE, IT IS ORDERED AND ADJUDGED that the objection of Ford Motor Credit Company to the confirmation of Gwendolyn Rocker Shula is SUSTAINED and her case is DISMISSED with a 90–day injunction.