**IN RE: Barry Richard WERTZ, II Debtor.**

**Case No. 4:15-bk-15244**

United States Bankruptcy Court, E.D. Arkansas, **Little Rock Division.**

Signed August 17, 2016

James O. Wyre, II, Conway, AR, for Debtor.

Joseph F. Kolb, Little Rock, AR, for Creditor Ally Financial, Inc.

## ORDER

Phyllis M. Jones, United States Bankruptcy Judge

Before the Court is the Objection to Confirmation (the **"Objection"**) filed by Ally Financial, Inc. (**"Ally"**) on November 1, 2015 (Doc. No. 11), objecting to confirmation of the Chapter 13 Plan (the **"Current Plan"**) filed by Barry Richard Wertz, II (the **"Debtor"**) on October 16, 2015 (Doc. No. 4). The Objection was heard on December 17, 2015. Ally appeared by and through its counsel, Mr. Joseph F. Kolb. The Debtor appeared in person and by and through his attorneys, Bankruptcy Professional Center, by Mr. James O. Wyre, II. The issue before the Court is whether the value of the Debtor's vehicle in a confirmed plan in the Debtor's prior bankruptcy case that was dismissed before completion must be assigned as the value to the vehicle in the Debtor's current bankruptcy case. At the close of the hearing, the Court took the matter under advisement. The parties each submitted cases offered in support of their positions following the hearing. For the reasons stated below, the Court finds that the Objection should be overruled.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The following shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 3015(f) and 9014.

## II. FINDINGS OF FACT

On September 9, 2011, the Debtor entered into a retail installment sales contract with Frank Fletcher Chrysler Jeep (the **"Seller"**) to purchase a new 2011 Dodge Ram 1500 (the **"Vehicle"**) for a total sale price of $47,058.24, with the Debtor financing $42,594.95 of the purchase price with the Seller at an annual percentage rate of 1.90%. (Ally's Ex. 1). A notation at the bottom of the contract indicates that the Seller assigned its interest in the contract to Ally. (Ally's Ex. 1). Ally is listed as first lienholder on the face of the certificate of title to the Vehicle. (Ally's Ex. 2).

After purchasing the Vehicle, the Debtor filed for protection under the provisions of Chapter 13 of the United States Bankruptcy Code in 2012. His case, however, was

dismissed in August 2013 for failure to make payments to the Chapter 13 Trustee. The Debtor filed another bankruptcy case in 2014 (the "**2014 Case**"), but that case was likewise dismissed in August 2015 for failure to make payments to the Chapter 13 Trustee. The Debtor's third and current case was filed on October 16, 2015. (Ally's Ex. 12). The Debtor is represented by different counsel in the instant case than in the 2014 Case. It is the series of events and agreements between the parties in the 2014 Case that forms the basis for Ally's objection to the Debtor's Current Plan.

The Debtor proposed a plan in the 2014 Case and Ally objected to confirmation of the plan. (Ally's Ex. 3). Ally's objection was settled without a hearing by an agreement between the parties, which provided in part that within twenty-one days, the Debtor would modify his plan to "value the [Vehicle] at, and propose to pay Ally the sum of $32,275.00, together with interest at 5.25% per annum." (Ally's Ex. 4). The settlement was memorialized by order entered on September 9, 2014. (Ally's Ex. 4). The order was approved by the attorney for the Debtor. (Ally's Ex. 4). The Debtor testified that he was not aware of this agreement. Before the plan was modified consistent with the terms of the agreement, however, the 2014 Case was dismissed on March 18, 2015, for the Debtor's failure to make payments to the Chapter 13 Trustee as required by a strict compliance order. (Ally's Ex. 5). The order of dismissal was later set aside on June 4, 2015. While the case was dismissed, Ally sought relief from the automatic stay. After the case was reinstated, the parties entered into an agreement settling the mo-

tion for relief from stay. (Ally's Exs. 6-8). Pursuant to the agreed order entered on June 30, 2015, settling the motion for relief, the motion for relief was withdrawn on conditions, including that the Debtor, within ten days, modify his plan to again "value the [Vehicle] at, and propose to pay Ally the sum of $32,275.00, together with interest at 5.25% per annum." (Ally's Ex. 8).

On July 13, 2015, the Debtor modified his plan in the 2014 Case consistent with the terms of the parties' settlements, proposing to pay Ally the value of $32,275.00 for the Vehicle plus interest at 5.25%. (Ally's Ex. 9). Pursuant to the modified plan, the Debtor was to pay $1,882.00 per month to the Chapter 13 Trustee. (Ally's Ex. 9). The Debtor's plan, as modified, was confirmed in the 2014 Case on August 12, 2015. (Ally's Ex. 10). On August 24, 2015, however, the Debtor's 2014 Case was dismissed for the Debtor's failure to make payments to the Chapter 13 Trustee as required by a strict compliance order. (Ally's Ex. 11). During the pendency of the 2014 Case, Ally received at least two payments totaling $2,773.04,[1] but at the time the 2014 Case was dismissed, the arrearage due on Ally's claim was $5,446.92.[2]

At the December 17, 2015, hearing in the current case, the Debtor testified that he never agreed to value the Vehicle at $32,275.00 in the 2014 Case. He explained that he had an extremely difficult time communicating with his bankruptcy counsel in his prior case. The Debtor testified that he often attempted to call, email, and even text his attorney in his prior case, but seldom received a response. The Debtor

---

1. Mr. Pine, an attorney with the Chapter 13 Trustee's office, testified at the hearing that the Trustee's office made two payments to Ally on August 4, 2015: an interest payment in the amount of $1,319.72, and a principal payment of $1,453.32.

2. Mr. Pine testified at the hearing that the Trustee's office calculated the arrearage amount owed at the time the 2014 Case was dismissed as $5,365.30 due in principal and $81.62 due in interest.

further testified that he was unaware of Ally's objection to confirmation of his plan in the 2014 Case, he was unaware of any agreement to modify his plan to increase the value of the Vehicle, and that he was unaware of any delay in filing the modified plan. He added that he was never provided copies of documents or pleadings that were filed in the 2014 Case by his previous bankruptcy counsel. The Debtor testified that the 2014 Case was dismissed because he could not afford the plan payments. The Debtor acknowledged that $32,275.00 may have been an accurate value for the Vehicle in 2012, the date of his first bankruptcy case, but not in 2014 or later. The Court finds the Debtor's testimony credible.

The Debtor filed the instant bankruptcy case on October 16, 2015, and was represented by new counsel. Along with his voluntary petition, the Debtor filed his Current Plan. (Ally's Ex. 13). In his Current Plan, the Debtor proposes to pay $1,215.00 per month to the Chapter 13 Trustee in semi-monthly installments. (Ally's Ex. 13). Of this amount, $722.00 is to be applied to the debts of secured creditors, leaving $493.00 per month for administrative claims and unsecured creditors. (Ally's Ex. 13). Mr. Pine, an attorney with the Chapter 13 Trustee's office, testified at the hearing that the Debtor had already made one semi-monthly payment to the Trustee's office in the amount of $800.00 as of the date of the hearing.

The Debtor's Current Plan values the Vehicle at $21,000.00 and proposes payment to Ally of $399.00 per month at 5.25%

interest. (Ally's Ex. 13). At the hearing, the Debtor introduced an NADA report for a 2011 Ram 1500 dated November 23, 2015, which reflected an overall "clean retail" price of $20,275.00, and a slightly lower clean retail price of $18,150.00 with the specific mileage and options included on the report. (Debtor's Ex. 1). Moreover, the Debtor testified that he believed the Vehicle to be in "average" condition, as opposed to clean, as the windshield needs to be repaired, and the tires need to be replaced. In addition, upon questioning by counsel for the Debtor, Mr. Pine testified that Ally has filed a proof of claim in the Debtor's current bankruptcy case, which claim values the Vehicle at $24,925.00.

Ally objects to confirmation of the Debtor's Current Plan on four grounds: (1) that the plan is not proposed in good faith; (2) that the doctrine of *res judicata* applies to the valuation given to the Vehicle in the confirmed plan in the 2014 Case, which valuation must be used in the current case; (3) that confirmation of the Current Plan is barred by the doctrines of equitable estoppel, judicial estoppel, or the doctrine of inconsistent positions in that the Current Plan values the Vehicle at 21,000.00 rather than $32,275.00 as in the 2014 Case; and (4) that confirmation of the Current Plan should be denied under Section 105 of the Bankruptcy Code because confirmation would reward the Debtor for allowing the 2014 Case to be dismissed, resulting in an abuse of process and inequitable treatment of Ally's claim.[3]

---

**3.** In the written objection to confirmation filed by Ally on November 1, 2015 (Doc. No. 11), Ally rejected the Current Plan because "the debtor does not propose to pay the value of the claim and interest of Ally; the plan does not propose to surrender the property securing the claim of Ally; the plan is not feasible; and Ally is not adequately protected." (Ob. to Confirmation ¶ 3, Doc. No. 11). At the December 17, 2015 hearing, however, Ally did not argue all of the points mentioned in its objection, but rather argued against confirmation on the four grounds mentioned in the body of this opinion. Any arguments made in the written objection, but not raised at the hearing, are deemed abandoned and are accordingly overruled.

## III. CONCLUSIONS OF LAW: OBJECTION TO CONFIRMATION

### A. Good Faith

■ Ally's first argument is that the Debtor has not proposed the plan in good faith. In order for the Court to confirm a Chapter 13 plan, the plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3) (2012). Good faith is not defined by the Bankruptcy Code. In determining good faith under Section 1325(a)(3), the Eighth Circuit evaluates the "totality of the circumstances." *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1349 (8th Cir. 1990). In evaluating the totality of the circumstances, the Court "must look at factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." *Education Assistance Corp. v. Zellner*, 827 F.2d 1222, 1227 (8th Cir.1987). In addition, the Court may also look at additional factors such as the type of debt to be discharged, whether the debt is nondischargeable under Chapter 7 of the Bankruptcy Code, and the Debtor's motivation and sincerity in seeking relief under Chapter 13.[4] *In re LeMaire*, 898 F.2d at 1349; *In re Hopper*, 474 B.R. 872, 884 (Bankr.E.D.Ark.2012); *In re Ault*, 271 B.R. 617, 620 (Bankr.E.D.Ark. 2002).

Ally argues the Debtor lacked good faith in proposing the Current Plan because the Debtor agreed to value the Vehicle at $32,275.00 in the 2014 Case; it took the Debtor almost one year to follow through with his agreement in the 2014 Case; the 2014 Case was dismissed for the Debtor's failure to make payments shortly after confirmation; and when the Debtor re-filed the current case, he reduced the value of the Vehicle to $21,000.00, a difference of approximately $11,000.00.

The Debtor argues the Current Plan was filed in good faith because the Vehicle is valued at an amount greater than its NADA value, Ally's own proof of claim values the Vehicle at only $24,925.00, and the agreements and delays in modifying his plan in the 2014 Case were not the fault of the Debtor, but were rather representative of the difficulties the Debtor had in communicating with his prior bankruptcy counsel. In addition, the Debtor argues that he did not benefit from multiple bankruptcy cases as he has had to pay attorneys' fees and filing fees for each of the three cases and his multiple filings will severely affect his credit.

In evaluating the totality of the circumstances, the Court agrees with the Debtor that the Current Plan has been filed in good faith. Importantly, Ally does not argue that the Debtor has been inaccurate in stating his debts and expenses, that the Debtor has made any type of misrepresentation, or that the debt owed to Ally would be nondischargeable under Chapter 7.[5]

---

**4.** These factors, along with several others, were enumerated by the Eighth Circuit in *United States v. Estus (In re Estus)*, 695 F.2d 311, 317 (8th Cir.1982), as factors the court could consider in evaluating good faith under Section 1325(a)(3). Following *Estus*, the Bankruptcy Code was amended to include Section 1325(b), which subsumed many of the *Estus* factors. The Eighth Circuit has made clear, however, that the "totality of the circumstances" approach and the *Estus* factors

not addressed by Section 1325(b) remain relevant to a good faith determination under Section 1325(a)(3). *See In re LeMaire*, 898 F.2d at 1349.

**5.** Nor does Ally raise the Debtor's multiple bankruptcy filings as grounds for objecting to confirmation. The Court notes that this is the Debtor's third bankruptcy filing. While repeat filings often weigh in favor of finding a lack of good faith, the Court finds that under the

The main issues between the parties appear to be whether the Debtor has unfairly manipulated the Bankruptcy Code or whether the Debtor had an improper motive in seeking relief under Chapter 13 in the current case.

Pursuant to Section 1325(a)(5)(B)(ii) of the Bankruptcy Code, the value of collateral establishing a secured claim amount is determined *"as of the effective date of the plan."* 11 U.S.C. § 1325(a)(5)(B)(ii) (2012) (emphasis added). By statute, therefore, valuation is to be determined as of the effective date of the plan; there is no language suggesting that valuation be determined based on an agreement entered into between the parties in a prior case that was not completed, as Ally suggests.

The evidence overwhelmingly supports a finding that the Vehicle is worth substantially less than the $32,275.00 valuation used in the prior case. The Debtor introduced an NADA report for a 2011 Dodge Ram 1500 dated November 23, 2015, which reflected an overall "clean retail" value for such a vehicle of $20,275.00, and an even lower value of $18,150.00 for a 2011 Dodge Ram 1500 with the specific mileage and other options included on the report. (Debtor's Ex. 1). The Debtor also testified that the Vehicle is in "average" condition, as opposed to clean, and needs a new windshield and new tires. Additionally, the testimony revealed that Ally's own proof of claim filed in the instant case values the Vehicle at $24,925.00. The Debtor's valuation of the Vehicle at $21,000.00 in the Current Plan, which valuation is to be determined "as of the effective date of the plan" pursuant to statute, supports a finding of good faith.

Case law also supports a finding of good faith. In *In re Shula*, 280 B.R. 903 (Bankr. S.D.Ala.2001), the court found the Debtor's plan was proposed in good faith despite the fact that the value of a vehicle was significantly decreased from the value given the vehicle in a confirmed plan in a prior case. There, the Debtor, in her prior case, settled an objection to confirmation by agreeing to pay Ford $23,400.00 on its secured vehicle claim. *Id.* at 904–05. The Debtor's plan in the prior case was confirmed, but the Debtor later voluntarily dismissed her case when she realized she would not be able to make all the payments pursuant to the confirmed plan. *Id.* Approximately one month later the Debtor filed her second case under Chapter 13 of the Bankruptcy Code, valuing the vehicle at $8,600.00. The court found the second plan was proposed in good faith because the Debtor could not modify her confirmed plan in the first case as claims to secured creditors cannot be reduced, the Debtor could not afford to pay her creditors because certain medical expenses had increased, and the Debtor "took advantage of the fact that the value of her vehicle ha[d] decreased considerably" in filing the second case. *Id.* at 906. The court found that "the fact that the debtor is taking advantage of her legal rights is not, by itself, sufficient to support a finding of bad faith."[6] *Id.*

Other courts have likewise found good faith even when a debtor's plan in a subsequent case proposes less favorable treatment for a creditor than what was proposed in a prior case. *See In re Robinson*, No. 07–41562–13, 2008 WL 2095349

---

facts and circumstances of this case, including the credibility of the Debtor and his testimony given at the hearing, the multiple filings would not weigh against a finding of good faith.

**6.** While the Court in *Shula* did not find bad faith, it ultimately found that the proposed plan in the second case was not feasible, and sustained the creditor's objection on those grounds.

(Bankr.D.Kan. May 16, 2008) (plan filed in good faith despite fact that due to miscalculation, debtor's original case was filed on 906th day from purchase of vehicle, debtor did not make any payments and allowed prior case to be dismissed, and then refiled so that claim would no longer be classified as a 910 car claim); *In re Murphy*, 375 B.R. 919 (Bankr.M.D.Ga.2007) (plan proposed in good faith even though vehicle was 910 car claim in prior case, which case was dismissed for failure to make payments, and second case was filed on 915th day allowing debtor to cram down creditor's claim); *In re Watson*, No. 93–50486, 1994 WL 1886769 (Bankr.S.D.Ga. Mar. 21, 1994) (plan proposed in good faith even though vehicle was valued at $1,500 more in Debtor's prior case which prior case was voluntarily dismissed by Debtor after Debtor was laid off from work).

Based on the Debtor's testimony and the evidence introduced at the hearing, the Court finds that the Debtor was not attempting to unfairly manipulate the Bankruptcy Code in filing his current case, nor did the Debtor have improper or insincere motives in filing the new case. The evidence reveals that the Debtor could not afford the $1,882.00 monthly plan payment in the 2014 Case and had poor communication with his prior attorney. The evidence further reveals that the Debtor was unaware of the settlement that resulted in the $32,275.00 valuation of the Vehicle in the 2014 Case. When the Debtor's case was ultimately dismissed for failure to make full and timely payments pursuant to a strict compliance order, the Debtor retained new bankruptcy counsel, took advantage of the valuation provisions of Section 1325(a)(5)(B), and proposed a plan that values the Vehicle at $21,000.00 and lowers the proposed monthly plan payment to $1,215.00.

Based on the totality of the circumstances and the specific facts of this case, the Court finds the Debtor's Current Plan has been proposed in good faith and not by any means forbidden by law. Therefore, for all the foregoing reasons, Ally's objection to confirmation based on lack of good faith is overruled.

B. *Res Judicata*

■ Ally's second argument against confirmation of the Current Plan is that the doctrine of *res judicata* applies to the valuation given to the Vehicle in the confirmed plan in the 2014 Case, and therefore, the Vehicle must be valued at $32,275.00 in the current case. Ally cites no authority in support of this proposition.

■ Section 1327(a) provides that the "provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a) (2012). Importantly, however, "the *res judicata* effect of confirmation may be eliminated ... if confirmation is revoked, *or if the case is later dismissed* or converted to another chapter." 8 COLLIER ON BANKRUPTCY ¶ 1327.02[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (emphasis added); *see also Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1413 (9th Cir.1985) ("We reject the defendants' contention that the Nashes continued to be bound by the terms of the first confirmed plan after dismissal. The dismissal effectively vacated the first confirmed plan."); *In re Shula*, 280 B.R. at 905 (because the debtor's first bankruptcy case was dismissed "her plan from that case [was] no longer binding.").

■ *Res judicata* applies only to final

orders.[7] *See Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983) ("The doctrine of *res judicata* bars a later suit when (1) the first suit resulted in a *final judgment on the merits*; (2) the first suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both suits involved the same parties or their privies." (emphasis added)) (citing *Ward v. Ark. State Police*, 653 F.2d 346 (8th Cir.1981)). When a Chapter 13 case is dismissed prior to completion, the confirmed plan is voided and neither *res judicata* nor collateral estoppel apply because there is no longer a final judgment. *See In re Sanitate*, 415 B.R. 98, 105–06 (E.D.Pa.2009).

Here, the 2014 Case was dismissed on August 24, 2015, for the Debtor's failure to make payments pursuant to a strict compliance order. The plan, which had been confirmed prior to dismissal, was effectively vacated upon dismissal of the case. Accordingly, the terms of the plan, including the valuation of the Vehicle at $32,275.00, were no longer binding on the Debtor or on Ally, and the confirmed plan did not constitute a "final" judgment for purposes of *res judicata*. Ally's second argument against confirmation thus fails because the doctrine of *res judicata* does not apply.

For the foregoing reasons, the Court finds that the Debtor is not bound by the doctrine of *res judicata* to value the Vehicle the same amount as valued in the prior confirmed plan in a case that was dismissed prior to completion. Ally's objection to confirmation based on *res judicata* is overruled.

C. Doctrines of Equitable Estoppel, Judicial Estoppel, and Inconsistent Positions

Ally's third argument is that confirmation of the Current Plan is barred by the doctrines of equitable estoppel, judicial estoppel, or inconsistent positions in that the Current Plan values the Vehicle at $21,000.00 rather than $32,275.00 as in the 2014 Case. Ally argues these doctrines bar the Debtor from taking a different position in the instant case from the position he took in the 2014 Case because the instant case was filed less than two months after the plan was confirmed in the 2014 Case and there have been no material changes in the Debtor's circumstances.

Equitable Estoppel

 Ally does not specify whether its equitable estoppel argument is based on federal or state law. "When a claim of equitable estoppel is made with respect to a federal statute, federal law principles of equitable estoppel apply." *Heflin v. Santander Consumer USA, Inc. (In re Heflin)*, 464 B.R. 545, 553 (Bankr.D.Conn. 2011). The Court believes the federal law principles of equitable estoppel apply to the case at hand as the case involves the application of the federal bankruptcy statutes. The Court will, however, evaluate equitable estoppel under both federal and state law.

 To prevail under a theory of equitable estoppel under federal law, "the party requesting the estoppel must show that the defendants have engaged in 'affirmative conduct ... that was designed to mislead or was unmistakably likely to mislead' a plaintiff." *Bell v. Fowler*, 99 F.3d 262, 268-69 (8th Cir.1996) (quoting *Garfield v. J.C. Nichols Real Estate*, 57 F.3d 662, 666 (8th Cir.1995)). Intent is a necessary element of equitable estoppel under federal law; the defendant must intend to mislead the plaintiff. *Id.* at 269; *Dring v.*

---

**7.** The doctrine of collateral estoppel similarly requires the existence of a "valid and final judgment." *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983) (citing *In re Piper Aircraft Distribution System Antitrust Litigation*, 551 F.2d 213 (8th Cir.1977)).

*McDonnell Douglas Corp.*, 58 F.3d 1323, 1329 (8th Cir.1995) (defendant must have engaged in a "deliberate design" that "lulled or tricked" the plaintiff) (citations omitted).

▮ To prevail under a theory of equitable estoppel under Arkansas law, rather than federal law, the party moving for equitable estoppel must prove four elements:

(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the party asserting estoppel must rely on the other's conduct to his detriment.

*In re Garrison*, 462 B.R. 666, 682–83 (Bankr.W.D.Ark.2011) (citing *Felton v. Rebsamen Med. Ctr., Inc.*, 373 Ark. 472, 481, 284 S.W.3d 486, 493 (2008); *King v. Powell*, 85 Ark. App. 212, 224, 148 S.W.3d 792, 799 (2004)).

▮ Under both federal and state law, the party asserting the doctrine of equitable estoppel bears the burden of proof. *Bell v. Fowler*, 99 F.3d at 268–69 (stating the party moving for equitable estoppel under federal law must show that it applies) (citing *Garfield*, 57 F.3d at 666; *Dring*, 58 F.3d at 1329); *In re Garrison*, 462 B.R. at 683 (stating that the party moving for equitable estoppel under Arkansas law bears the burden of proof) (citing *Design Prof'l Ins. Co. v. Chicago Ins. Co.*, 454 F.3d 906, 912–13 (8th Cir. 2006)).

▮ The Court finds that Ally failed to prove that equitable estoppel applies under either federal or Arkansas law. The evidence revealed that in the 2014 Case, Ally's objection to confirmation and later motion for relief from stay were settled without hearings by agreements valuing the Vehicle at and paying Ally the sum of $32,275.00. The plan was confirmed, but the 2014 Case was dismissed shortly after confirmation for nonpayment.

Under the facts of this case, the Court finds that the Debtor lacked the requisite intent to mislead Ally. There was no evidence that the Debtor engaged in affirmative conduct designed to mislead, lull, or trick Ally and no evidence that the Debtor knew facts of which Ally was ignorant. On the contrary, the evidence suggested that the Debtor was completely unaware of the particulars of the 2014 Case. Accordingly, equitable estoppel does not apply. Ally's objection to confirmation based on equitable estoppel is overruled.

### Judicial Estoppel / Doctrine of Inconsistent Positions

▮ As with equitable estoppel, Ally does not specify whether its judicial estoppel argument is based on federal or state law.[8] Generally, federal law governs the application of judicial estoppel in bankruptcy proceedings. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (citing *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1261 (11th Cir.1988); *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir.1999)); see also *Johnson v. Daggett, Van Dover, Donovan & Perry, PLLC*, 99 F.Supp.2d 1008, 1015 (E.D.Ark. 2000) (applying federal law of judicial estoppel in federal diversity case when prior case was based on federal question jurisdiction). As with equitable estoppel, the Court believes federal judicial estoppel

---

8. The doctrine of inconsistent positions and judicial estoppel are often used interchangeably by the courts; under Arkansas law, however, the doctrine of inconsistent positions is separate from and broader than judicial estoppel, as is further discussed below.

governs the case at hand, but it will evaluate judicial estoppel under both federal and state law.

■■■ "Judicial estoppel is an equitable doctrine that 'prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." ' *Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1032–33 (8th Cir.2016) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). The purpose of the doctrine of judicial estoppel is to " 'protect the integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.' " *New Hampshire*, 532 U.S. at 749–50, 121 S.Ct. 1808 (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982); *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)).

■■■ While there is no specific formula for applying judicial estoppel, the United States Supreme Court has enumerated the following three factors as being helpful in evaluating whether judicial estoppel applies: (1) whether a party's later position is "clearly inconsistent" with its prior position; (2) whether that party has successfully persuaded a court to accept the prior position "so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) whether the party asserting the inconsistent positions "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750–51, 121 S.Ct. 1808 (citations omitted).

■■■ Judicial estoppel is an extraordinary remedy and requires evidence of " 'intent to manipulate or mislead the courts.' " *Taylor v. Comcast Cablevision of Ark., Inc.*, 252 F.Supp.2d 793, 799 (E.D.Ark.2003) (quoting *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir.1996)). "The courts generally require that the taking of an inconsistent position be intentional and that the party doing so had the improper motive of seeking an unfair advantage." *Id.* at 796.

■■■ Under Arkansas law, judicial estoppel requires a showing of the following four elements, as stated by the Arkansas Supreme Court:

■■■ (1) A party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case; (2) A party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; (3) A party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and (4) The integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken.

*Dupwe v. Wallace*, 355 Ark. 521, 533–34, 140 S.W.3d 464, 472 (2004). Similar to judicial estoppel under federal law, intent is a requisite element of judicial estoppel under Arkansas law, and the court must determine "whether the litigant was playing fast and loose with the courts." *Id.* at 535, 140 S.W.3d at 472. The litigant's "conduct must be 'tantamount to a knowing misrepresentation to or even fraud on the court ....' " *Id.* (quoting *Arboireau v. Adidas–Salomon, A.G.*, 347 F.3d 1158 (9th Cir.2003)).

■■■ Courts often use judicial estoppel interchangeably with the doctrine of incon-

sistent positions. *In re Garrison*, 462 B.R. at 683 (citing *Breckenridge v. Breckenridge*, 2010 Ark. App. 277, 375 S.W.3d 651, 683 (2010)). Under Arkansas law, however, the doctrine of inconsistent positions is broader than judicial estoppel as "[j]udicial estoppel prohibits a party from manipulating the courts through inconsistent positions to gain an advantage [but] [t]he doctrine against inconsistent positions may also apply to positions taken *outside litigation*." *Dupwe*, 355 Ark. at 531, 140 S.W.3d at 470 (emphasis added) (citing *Tenn. v. Barton*, 210 Ark. 816, 198 S.W.2d 512 (1946)).

■ The Court finds that judicial estoppel does not apply to the facts of this case under either federal or Arkansas law, nor does the doctrine of inconsistent positions apply to the facts of this case. Here, the Debtor has valued the Vehicle at $21,000.00 in his Current Plan, but previously valued it at $32,275.00 in his 2014 Case, which case was confirmed only two months prior to his filing of the instant case.

In evaluating the *New Hampshire* factors, the Court questions whether the two valuations, while more than $11,000.00 apart, are "clearly inconsistent." As stated above, Section 1325(a)(5)(B) allows Chapter 13 debtors to value collateral "as of the effective date of the plan." 11 U.S.C. § 1325(a)(5)(B)(ii) (2012). Valuation changes over time, and thus it is not "clearly inconsistent" as a matter of law for the value of a vehicle to decrease from a plan proposed in one case to a plan proposed in a later-filed case. In this particular case, the Court recognizes that only two months elapsed from the confirmation of the plan in the 2014 Case to the filing of the instant case and Current Plan. While there was no evidence that the Vehicle

itself actually depreciated by $11,000.00 during the two month period of time, the Court notes that the agreement to value the Vehicle at $32,275.00 was first reached in September 2014, more than one year prior to the current bankruptcy filing and filing of the Current Plan. The Court also finds that the Debtor gave a satisfactory explanation for the different valuations, which is discussed in greater detail below regarding the Debtor's intent. Of further significance is that Ally's own proof of claim filed in the current case valued the Vehicle at $24,925.00.

As to the other *New Hampshire* factors, although the modified plan was confirmed in the 2014 Case, the Court does not believe it was misled or that the valuation allowed the Debtor to obtain an unfair advantage or impose an unfair detriment on Ally. The Debtor explained that $32,275.00 may have been an accurate value for the Vehicle in 2012 at the time of his first filing, but he explained he was unaware of any agreement to value the Vehicle at that amount in his 2014 Case, and in fact testified that the Vehicle was not worth $32,275.00 at the time the 2014 Case was filed. Based on this testimony, it was Ally who stood to receive a benefit from the higher valuation, not the Debtor. When the Debtor's 2014 Case failed because he could not afford the payment, the Debtor retained new counsel and took advantage of the provisions of Section 1325(a)(5)(B), which allowed the Debtor to value the Vehicle "as of the effective date of the plan." 11 U.S.C. § 1325(a)(5)(B)(ii) (2012). While Ally may be frustrated by the Debtor's actions, no unfair detriment was imposed because of the lower valuation in the instant case. Ally may not stand to receive the more favorable treatment of the plan in the prior case, but the Current Plan proposes to pay Ally the value consistent

with Section 1325(a)(5)(B) of the Bankruptcy Code. In fact, the value in the Current Plan is slightly higher than the highest NADA value reflected on the NADA Price Report for the Vehicle. (Debtor's Ex. 1). Because the Court was not misled by the Debtor, nor did the Debtor obtain an unfair advantage or impose an unfair detriment on Ally, the Court finds that the *New Hampshire* factors do not weigh in favor of a finding of judicial estoppel.

In addition, based on these same facts, the Court finds that the Debtor lacked the requisite intent to mislead the court. In *Taylor v. Comcast Cablevision of Ark., Inc.*, 252 F.Supp.2d 793 (E.D.Ark.2003), the court found insufficient evidence of an intent to deceive where the debtor failed to list a possible EEOC suit in his bankruptcy schedules. *Id.* at 799. The court noted that the debtor was unsophisticated, relied the advice of his counsel, and also noted that since receiving his discharge, the debtor moved to take corrective action to reopen his bankruptcy case to include the cause of action. *Id.* at 796–99. Based on these factors, the court found no intent to deceive, and thus found that the debtor (or perhaps his bankruptcy trustee who had sought to intervene) was not judicially estopped from pursuing the EEOC claim. *Id.* at 799. Here, based on the evidence and the Debtor's testimony, which the Court finds credible, no intent to mislead is found by the Court. Ally's argument under federal judicial estoppel fails.

To the extent Ally argues for judicial estoppel under Arkansas law, the Court finds that argument also fails for many of the same reasons. Again, the Court questions whether the valuations are clearly inconsistent, but even if they are, the Court finds that the Debtor did not have the intent to manipulate the court or gain an unfair advantage. In addition, to the extent the broader doctrine of inconsistent positions allowed under Arkansas law would be applicable, no evidence was introduced to suggest the Debtor took a position outside of these bankruptcy cases that was clearly inconsistent with the Debtor's valuation in the Current Plan. Accordingly, Ally's argument under the doctrine of inconsistent positions fails.

For these reasons, the Court finds the Debtor is not estopped from valuing the Vehicle at an amount lower than $32,275.00 in his Current Plan. Ally's objection to confirmation based on judicial estoppel and the doctrine of inconsistent positions is overruled.

### D. Section 105(a)

Ally's final argument against confirmation of the Current Plan is that confirmation should be denied under Section 105(a) of the Bankruptcy Code because confirmation would reward the Debtor for allowing the 2014 Case to be dismissed, resulting in an abuse of process and inequitable treatment of Ally's claim.

Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a) (2012). "Section 105 is a powerful tool at the disposal of bankruptcy

courts; however, it cannot create substantive rights." *In re Gjestvang*, 405 B.R. 316, 321 (Bankr.E.D.Ark.2009) (citing *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir.2000)). Section 105(a) can aid the court in preserving "a right provided for in the bankruptcy code, but it is not a 'roving commission to do equity.'" *Id.* at 321 (quoting *Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 444–45 (1st Cir.2000)).

■ Because the Court finds that the Debtor proposed his plan in good faith; is not barred by the doctrine of *res judicata* from valuing the Vehicle at a lower amount in the current case; and is not estopped under theories of equitable estoppel, judicial estoppel, or the doctrine of inconsistent positions from valuing the Vehicle at a lower amount in the current case, the Court cannot and will not use its equitable powers under Section 105(a) to do what the Bankruptcy Code and principles of law will not allow. Ally's objection to confirmation based on Section 105(a) is overruled.

### IV. CONCLUSIONS OF LAW: VALUE OF VEHICLE

■ Having overruled Ally's objections to confirmation of the Current Plan, the Court is left to determine the value of the Vehicle. In determining value of motor vehicles, "courts must use discretion in determining value on a case-by-case basis, depending on the purpose of the valuation and the proposed disposition or use of the collateral." *In re Owens*, 120 B.R. 487, 490 (Bankr.E.D.Ark.1990).

Although the Debtor values the Vehicle at $21,000.00 in the Current Plan, the Debtor introduced an NADA report for a 2011 Ram 1500, which reflected an overall "clean retail" price of only $20,275.00, and a slightly lower clean retail price of $18,150.00 with the specific mileage and options included on the report. (Debtor's Ex. 1). Moreover, the Debtor testified that he believed the Vehicle to be in "average" condition, as opposed to clean, as the windshield needs to be repaired, and the tires need to be replaced. The evidence also established that Ally's proof of claim filed in the instant case values the Vehicle at $24,925.00.

The Court finds the weight of the evidence, including the NADA report and the Debtor's testimony, would support a valuation of $18,150.00 for the Vehicle as of the date of the hearing. *See In re Owens*, 120 B.R. at 492 (stating that the "effective date of the plan" provided by Section 1325(a)(5)(B) is not defined by the Code, and determining that the value of the vehicle would be determined as of the date of the confirmation hearing) (citations omitted). However, the Debtor, as the owner of the Vehicle and proponent of the plan has placed a value of $21,000.00 in the Current Plan. The Court finds that the Debtor's value as the plan proponent is appropriate given the facts and circumstances of this case. Accordingly, the value of the Vehicle is set at $21,000.00.

### V. CONCLUSION

For the foregoing reasons, Ally's objection to confirmation of the Current Plan is overruled. The value of the Vehicle is determined to be $21,000.00.